```
                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

           BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE



STEPHANIE ENYART,                )
                                 )
              Plaintiff,         )
                                 )   No. C 09-5191 CRB
                                 )   PAGES 1-12
vs.                              )
                                 )
NATIONAL CONFERENCE OF BAR       )
EXAMINERS,                       )   San Francisco, California
                                 )   Friday
              Defendant.         )   January 29, 2010
                                 )   10:00 A.M.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

| | |
|---|---|
| **FOR PLAINTIFF:** | BROWN, GOLDSTEIN, LEVY<br>120 E. BALTIMORE STREET<br>BALTIMORE, MARYLAND<br>21202<br>(410)962-1030 |
| **BY:** | **Daniel F. Goldstein, Esquire** |
| | DISABILITY RIGHTS ADVOCATES<br>2001 CENTER STREET, FOURTH FLOOR<br>BERKELEY, CALIFORNIA<br>94704<br>(510)665-8644 |
| **BY:** | **Anna Levine, Attorney at Law**<br>**Laurence W. Paradis, Esquire** |

(FURTHER APPEARANCES ON NEXT PAGE.)

**REPORTED BY: SARAH L. GOEKLER, CSR NO. 13446**
Computerized Technology By Eclipse

```
 1  FURTHER APPEARANCES: (CONTINUED)

 2  FOR PLAINTIFF:              LABARRE LAW OFFICES, P.C.
                                1660 S. ALBION, SUITE 918
 3                              DENVER, COLORADO
                                80222
 4                              (303)504-5979
                    BY:         Scott C. LaBarre, Esquire
 5

 6  FOR DEFENDANT:              COOLEY, GODWARD, KRONISH, LLP
                                FIVE PALO ALTO SQUARE, 4TH FLOOR
 7                              3000 EL CAMINO REAL
                                PALO ALTO, CALIFORNIA
 8                              94306
                                (650)843-5054
 9                  BY:         Gregory C. Tenhoff, Esquire
                                Wendy J. Brenner, Attorney at Law
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1  Friday, January 29, 2010                              10:00 A.M.
 2                        P R O C E E D I N G S
 3          THE CLERK:  Calling case C 09-5191, Stephanie Enyart
 4  versus National Conference of Bar Examiners.
 5          Appearances, counsel.
 6          MR. GOLDSTEIN:  Yes.  Good morning, Your Honor.
 7  Daniel Goldstein on behalf of Stephanie Enyart.  With me today
 8  is Ms. Enyart, who's in front of the bar as a client of today,
 9  not yet as a lawyer.  Anna Levine, Disability Rights Advocates
10  who with your permission will argue any issues about the
11  objections if you want to hear issues, she'll make argument on
12  that.  Scott LaBarre of the LaBarre Law Firm and Larry Paradis
13  of Disability Rights Advocates.
14          MR. TENHOFF:  Good morning, Your Honor.  Greg Tenhoff
15  from Cooley, Godward, Kronish on behalf of the defendant
16  National Conference of Bar Examiners.  I have a smaller lineup.
17  I have Wendy Brenner from our office at counsel table.  I also
18  have Erica Moeser who is the president of the National
19  Conference of Bar Examiners who is seated in the galley.
20          THE COURT:  Of course I read the submissions.  And it
21  appears to me that the motion for preliminary injunction should
22  be granted.  We're talking about one case in front of me that
23  the -- as I understand it, the technology that would permit the
24  plaintiff to take the bar -- to take the -- is it MBE?  I don't
25  know.
```

1    **MR. GOLDSTEIN:** Yes, Your Honor. It's two exams, the
2    MBE, the Multistate Bar Examination, and the MPRE, the
3    Professional Responsibility.
4    **THE COURT:** The technology exists. The security
5    concerns, which I think are real -- not as to this plaintiff.
6    I mean, I didn't think for a moment that she would do something
7    improper with it. That's not suggested, but I think there is a
8    legitimate interest that the people who run the bar examination
9    are concerned about the security of the questions, the fact
10   that questions are used over a period of time, that if -- for
11   multiple examinations, and there needs to be guaranteed
12   protections in the -- in the administration of the tests from
13   year to year for competency purposes, consistency purposes,
14   fairness purposes, and so forth. That's legitimate. But as
15   pointed out in the papers, that can be done by the computer
16   remaining with the bar exam -- examiners in taking certain
17   precautions.
18   As I understand it, and you can correct me if I'm
19   wrong, in the case we're talking about something in the
20   neighborhood of up to $5,000 in costs if, in fact, the bar were
21   to set up a process by which the plaintiff can take this
22   examination with the -- I'm going to get this wrong -- the Zoom
23   or the --
24   **MR. GOLDSTEIN:** ZoomText and JAWS, Your Honor.
25   **THE COURT:** Zoom?

1            **MR. GOLDSTEIN:**  ZoomText and --

2            **THE COURT:**  And JAWS.  And therefore, the technology

3    exists, and it can be done, and the expense seems to be

4    manageable, and it can be bonded.  I mean, my view is there

5    ought to be a bond posted.  It can be bonded in case there

6    is -- ultimately, the Bar prevails on this matter.

7            Now, I must say I found it a little unsettling, the

8    suggestion that, well, after all, the plaintiff can use the

9    other mechanisms by which people who have sight problems have

10   been successful in the past in light of her assertion, which

11   I -- this may be correct that using the other mechanisms would

12   cause her nausea.  Without making light of it, the bar exam has

13   been known to be nauseating.  I, myself, recall taking the bar

14   exam and getting an acute migraine from it, but that goes with

15   the territory.  She should not be subjected by her disability

16   to consequences that don't flow attended to every other sighted

17   and nondisabled persons who takes the bar, so I'm setting that

18   aside.

19           I found it a little odd that this person -- that your

20   expert came in and asserted that she was wrong in this regard,

21   based upon some theoretical viewing of her disability.  Her

22   disability is legitimate.  From what I can tell, it's acute.

23   It should never prevent an individual from pursuing their dream

24   of -- if that is what it is -- of practicing law.  You know,

25   the quality of her advice can be easily as good, if not better,

1  than other individuals.
2          And I don't -- I think that there is a responsibility
3  under the act to take reasonable accommodations.  Those
4  accommodations appear to be entirely possible, given the
5  submissions that I've seen.  So what I was going to do is
6  indicate that I'm granting the motion for preliminary
7  injunction, that I was going to require a bond of $5,000.  I'll
8  hear about that and send you off to a Magistrate Judge to see
9  if you can work out the terms of providing this examination to
10 the plaintiff.
11         **MR. TENHOFF:**  Your Honor, if I may be heard on the
12 motion --
13         **THE COURT:**  That's fine.  Go right ahead.
14         **MR. TENHOFF:**  Thank you.  I think it's important
15 here -- I think the Court has recognized that the
16 accommodations that are being requested do, in fact, raise
17 legitimate security concerns.  What we have here is a series of
18 choices as to access to this examination, and the choices that
19 are being asked for, the preferred accommodation that's being
20 asked for does raise those security issues.  The other
21 accommodations, which have been offered to her do not raise
22 those same issues.  Now --
23         **THE COURT:**  How does -- what is contemplated by the
24 Court, which is the computer remains with the examiners.  They
25 use their own computer or a computer of theirs, not the

1  plaintiff's computer.  And how does that raise the security
2  concern?  Maybe they'll lose it going back and forth?  Yeah.
3  Send it Southwest or -- I mean, somebody who likes baggage.
4         (Laughter.)
5         **THE COURT:**  Isn't the point that you always have a
6  set of security concerns.  I understand that, but this is
7  not -- remember, we're talking about one plaintiff here.  And
8  haven't you said in your declarations -- haven't you said that
9  this may -- that you still have some security concerns, which I
10 think are redressed, actually, and that the cost of this
11 accommodation can't be within $5,000.  Isn't that what you're
12 saying?  Have I missed that?
13        **MR. TENHOFF:**  No, you haven't missed that, Your
14 Honor.  That is the cost.  The security concerns are twofold.
15 If she brings her own computer to the examination, there are
16 security concerns related to first of all leaving a trace of
17 the -- or a copy --
18        **THE COURT:**  I'm saying -- I don't think I said that.
19 I said she's not bringing her computer.  She's bringing your
20 computer, equipped with these programs that would provide this
21 type of examination, that is, whatever those things are.  I
22 mean, I don't -- I haven't gotten far into it yet.  What I
23 really understand is there are programs, JAWS and so forth and
24 Zoom, whatever they are, that there's an ability for her to
25 take the examination.  She's not saying she has to use her own

1  computer, is she?
2         **MR. GOLDSTEIN:**  No, she's not, Your Honor.  And, in
3  fact, the solution for how to do this is what the NCBE did in
4  2005 with Ms. Lucas (phonetic).  If you look at Exhibit 10 to
5  our opening motion, it's described what they did, which was
6  that the proctor had the test on a separate CD.  It had the
7  test, it had the ZoomText, and it had a Word program.  And so
8  two things got shipped separately, and the proctor then
9  loaded -- this is in Exhibit 10 -- loaded the CD onto the
10 laptop.  So it's very simple.  Even if seven laptops get
11 stolen, there's no risk to the exam.
12        A CD, which is worth what, about ten cents?  I think
13 these days you buy 100 of them for ten bucks.  A CD, just like
14 the audio CD they were talking about shipping -- and I was
15 interested to hear Mr. Tenhoff say these other things pose no
16 security concerns because there's no evidence to support that
17 there's no security concerns for the others.  And indeed,
18 Ms. Moeser said under oath when she was asked, is there a
19 greater risk of security with the computer than with the paper
20 and pencil?  She said, "I don't know.  I've never thought about
21 prioritizing them."
22        There are risks to security either way.  But we can
23 very simply and straightforwardly, seems to me, come up with a
24 simple solution, which is ship the laptop to wherever the exam
25 is going to be held, ship the CD with the JAWS ZoomText and the

1  exam to wherever the exam is going to be held.  Load it in and
2  take the exam.
3            **MR. TENHOFF:**  Your Honor, if this isn't a question
4  about reasonable accommodation, it's not a question about undue
5  hardship.  The statute says that we are to provide access to
6  the examination.  The statute Section 12103 of the ADA, which
7  applies to Title 1, Title 2, and Title 3 specifically lists
8  auxiliary aids and services, refers to qualified readers, paid
9  texts, or other effective means of delivering visually
10 delivered materials available to individuals with visual
11 impairments.  Section 12189 was the only thing --
12           **THE COURT:**  Well, the question is whether or not,
13 given her disability, you have provided that access.  And I
14 guess you could argue that along with it, maybe you have -- if
15 you give one of those airsickness bags that permits a person
16 who becomes nauseated to use, but I'm not going to require the
17 plaintiff to employ that type of a vice.  Look.  I know the
18 argument, and you lose.  Therefore, on that argument I'm
19 granting the injunction.
20           Now, it seems to me that you ought to sit down with
21 counsel and work out the terms of the injunction, and I want to
22 get -- I want you to meet -- first of all maybe you can do it
23 yourselves, but if you need the stance of a Magistrate Judge,
24 I'll appoint one, and I will appoint Magistrate Judge Chen to
25 work out the terms of the injunction.  I'm going to direct the

```
 1   parties to -- because it's an emergency here, I'm going to
 2   direct the parties to meet and confer on Monday on this issue,
 3   and failing on agreement, to meet with Judge Chen on Wednesday
 4   to see whether an injunction -- whether they can hammer out the
 5   terms of an injunction.  I understand that technically or that
 6   arguably when it's brought on this -- under this statute, you
 7   don't require -- that a bond is not necessarily required.  In
 8   this case, I think a bond is appropriate.
 9           MR. TENHOFF:  Your Honor --
10           MR. GOLDSTEIN:  Your Honor --
11           MR. TENHOFF:  -- if I may be heard on three points to
12   clarify.
13           THE COURT:  Yes.
14           MR. TENHOFF:  First, could I have the basis of the
15   Court's -- I don't know if the Court is going to issue an
16   order --
17           THE COURT:  I'm going to issue an order.  No problem
18   at all.  You'll get all my reasons.
19           MR. TENHOFF:  Secondly, I would request at this point
20   that if the Court is going to enter an order, that the order be
21   stayed pending --
22           THE COURT:  Why?  Why should it be stayed?  So she
23   can't take the bar?  I know there's an argument why we need one
24   more lawyer.  That's an argument that I use with my son who's
25   in law school, but the fact of the matter is that she has
```

1  rights.  And I understand she's employed as a paralegal or an
2  assistant and so forth, but there's no justification for
3  staying this, especially when you're talking about something
4  that you've said isn't going to cost more than $5,000.  So no.
5  Motion for stay will be denied, and I'll put forth my reasons.
6          **MR. TENHOFF:**  Thank you, Your Honor.
7          **MR. GOLDSTEIN:**  Your Honor, with respect to the
8  bonds, I'm not sure I can get it posted by Monday, but I'll --
9  but the Court was right in all particulars, so it must be right
10 about the bond.  I would not impose to dispute it.
11         **THE COURT:**  You know, that's what I think ought to be
12 done.  I'll give you time to post it and so forth.  It will be
13 in the order.  You're certainly entitled to an order.  I know
14 I've -- I know that I haven't heard your oral argument on these
15 issues, and I appreciate that.  I understand that, but it was
16 very well briefed, and there's a lot of evidence that's been
17 presented in connection with it.
18         There is also some urgency in the Court's view as to
19 this matter, so I think you're entitled to a reasoned opinion,
20 and I'll try to provide you with that as quickly as possible.
21 It will certainly be forthcoming next week.  Though, I would
22 like to get included within it the terms of the injunction.
23 Okay.
24         **MR. TENHOFF:**  Thank you, Your Honor.  If I may just
25 for a moment.  I do think it's important to understand -- the

1   Court has said twice this is about one person.  There's a
2   reason there are a lot of people in the courtroom.  It is not
3   about one person if, in fact, the standard is this is what best
4   ensures my success on exams.  This is not only for this type of
5   disability and not only for this type of exam, and so this is a
6   mandatory injunction providing full relief that someone would
7   get after they have actual success on the merits and is being
8   granted --
9           **THE COURT:**  As to one person.  It is granted as to
10  one person.  That's correct.  Now, your assertion that well
11  maybe other people can just say that they have this problem, I
12  assume people can say it.  And I assume if they say it without
13  it being accurate, there are consequences to that.  And so I
14  don't think there's a suggestion that the plaintiff in this
15  case doesn't have the condition that the plaintiff asserts that
16  she has, and that's why we take these cases one at a time.
17  That's, I think, in her case the just thing to do is to grant
18  the injunction.  I don't rule out other cases.  Okay.  Thank
19  you.
20          **MR. GOLDSTEIN:**  Thank you, Your Honor.
21          **MR. TENHOFF:**  Thank you, Your Honor.
22                          ---oOo---
23
24
25

**CERTIFICATE OF REPORTER**

I, SARAH L. GOEKLER, a Certified Shorthand Reporter, hereby certify that the foregoing proceedings were taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the said proceedings were thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: February 1, 2010.

_____
SARAH L. GOEKLER, CSR 13446