IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ENYART,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL CONFERENCE OF BAR EXAMINERS, INC.,<br><br>    Defendant._____/ | No. C 09-5191 CRB<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION** |

Plaintiff Stephanie Enyart moves for a preliminary injunction requiring the National Conference of Bar Examiners ("NCBE") to provide her with a particular accommodation in light of her disability. Enyart maintains that the accommodations offered by NCBE do not sufficiently accommodate her disability, and that they would result in her suffering a serious disadvantage on the Multistate Professional Responsibility Exam ("MPRE") and the multiple choice Multistate Bar Exam ("MBE").[1] NCBE maintains that it has offered Enyart a reasonable accommodation, and that it is not obligated to offer Enyart's preferred accommodation.

---

[1] Enyart is scheduled to take the bar exam in California. The State Bar Association approved Enyart's request for accommodations on the sections of the exam that are not controlled by NCBE. See Levine Decl., Exs. 5, 6. NCBE, however, which administers the MBE and MPRE, has not agreed to offer the same accommodations.

For the reasons explained below, Plaintiff's motion is GRANTED. One central dispute between the parties concerns the proper legal standard to apply under the American's with Disabilities Act ("ADA") for purposes of the success on the merits prong of the preliminary injunction standard. The Plaintiff seeks a standard that is more lenient for plaintiffs than the traditional "reasonable accommodation" standard, relying on language in the relevant Department of Justice ("DOJ") regulation. Defendant, however, seeks to apply the typical "reasonable accommodation" standard. Resolution of this issue raises the question of administrative deference. However, given the evidence presented by Plaintiff, Plaintiff is entitled to her requested accommodations even under Defendant's more stringent standard. Presumably, Defendant will make an argument at the merits stage that requiring the provision of Plaintiff's preferred accommodations in every comparable case will constitute an undue burden. However, for purposes of this motion Defendant has declined to make an undue burden argument. This Court will therefore not address that issue at this time. See Def. Opp. at 5 ("Because NCBE offered reasonable accommodations to Ms. Enyart, the undue burden issue does not arise here.") Therefore, this Court declines at this point to determine whether or not Plaintiff is correct that a different standard applies in this case. The Plaintiff has established her likelihood of success under either standard.

As to the remaining factors – balance of hardships, irreparable harm, and the interest of the public in the issue – all three factors lean in favor of Plaintiff. Defendant's primary concern with provision of computerized aids is with preserving the confidentiality of test questions, and it argues that this concern tips the balance of hardships and irreparable harm factors in its favor. This concern is minimized by ordering NCBE to use its own computer, which will remain in its possession after Enyart completes the examination.[2] Because there is no reason to believe that Enyart herself poses a security threat, keeping the computer in NCBE possession adequately addresses its security issues.

///

---

[2] As explained below, the injunction orders Enyart to post a bond that, assuming NCBE is ultimately successful, will fully compensate it for the costs incurred in provision of a laptop.

2

**BACKGROUND**

Stephanie Enyart is legally blind. Enyart Decl. ¶ 6. She has been diagnosed with macular degeneration and retinal dystrophy, known as Startgardt's Disease. Id., Levine Decl. ex. 26. According to Enyart, "[o]ver the years, based upon the individual evaluations and recommendations of assistive technology experts and training I have received in using assistive technologies, and practice, I have learned which technologies best suit my reading needs given my specific disability and changes in my vision over time." Enyart Decl. ¶ 7. While Enyart can use CCTV, one typical form assistive technology for blind persons, she "cannot use a CCTV for sustained reading . . . without suffering nausea and eye fatigue. . . . Regardless of the speed at which I try to read passages on the CCTV, the physical activity involved in tracking lines of text, and visually having to navigate like a cursor would through text, causes me symptoms of eye fatigue, disorientation and nausea within five minutes, which become fully developed several minutes after that." Id.

Enyart explains that one particular accommodation, namely, "a computer equipped with screen reading software (JAWS) and screen magnification (ZoomText) software," is required for her "to read lengthy texts, legal and academic material, to perform legal work." Id. ¶ 8. Further, "it is what I used to take all of my law school examinations, with the exception of a single multiple choice portion of one law school examination, which I took using only the assistance of a human reader, with disastrous results." Id. In sum, Enyart asserts that "[t]he combination of JAWS and ZoomText is the only method through which I can effectively read and comprehend lengthy or complex material." Id. ¶ 12.

The MPRE and MBE are both multiple-choice tests. Ms. Enyart applied to take the March, August, and November 2009 administrations of the MPRE, and also applied to take the July 2009 administration of the California Bar Exam. Enyart submitted with each application a request for her preferred accommodation. Enyart Decl. ¶¶ 18-23. Along with her requests, Enyart submitted supporting documentation from her vocational rehabilitation counselor, treating opthalmologist, law school dean, and an assistive technology specialist, "each of whom documented her need to use JAWS and ZoomText to access test

information." Mot. at 5; see Levine Decl. exs. 15, 16, 19. The State Bar of California approved Enyart's request as to the sections of the exam that it administers. However, the NCBE did not agree to permit Enyart to use JAWS and ZoomText for either the MBE or the MPRE.

While the NCBE declined to permit Enyart to use her preferred computer programs, it did agree to a number of accommodations. NCBE agreed to offer the combination of a CCTV to magnify the print exam and a human reader to read the text aloud. Levine Decl., exs. 17, 20, 31. NCBE also offered to provide a large-print exam in addition to an audio CD with the test questions pre-recorded. Id. exs. 47, 51, 52. NCBE also offered to permit Plaintiff the option of taking the MBE with JAWS alone as part of a pilot program. Mot. at 7. NCBE also offered double the standard time, a private room, a five minute break every hour, a scribe to fill in the answers, use of Enyart's lamp, a large print digital clock, sunglasses, yoga mat, and migraine medication. Moeser Decl. ¶ 6. However, NCBE would not permit Enyart to use ZoomText.

NCBE justified its denial of Enyart's request because it fears security risks associated with permitting computer aids to be used in multiple-choice tests. NCBE reuses some of the questions on both the MPRE and the MBE, and fears both that the use of laptops would permit a test-taker to surreptitiously record the questions, and that the very existence of these laptops make the test questions vulnerable to theft.

Enyart has registered for the February 2010 administration of the California Bar Exam, and the March 2010 administration of the MPRE.

## DISCUSSION

Enyart seeks a preliminary injunction under the ADA ordering the NCBE to permit her to use JAWS and ZoomText. The NCBE opposes any such order, arguing that it has already offered to reasonably accommodate Enyart's disability, and that it is not obligated to provide Enyart's choice of accommodation. Essentially, the NCBE argues that it is only obligated to provide a reasonable accommodation, which it believes it has done.

///

4

Because the accommodations provided by NCBE will not permit Enyart to take the exam without severe discomfort and disadvantage, she has demonstrated the test is not "accessible" to her, and that the accommodations therefore are not "reasonable." Therefore, this Court concludes, based on the current record and moving papers, that it is more likely than not that Enyart will succeed on the merits at trial. This Court further concludes that the balance of equities tips in Enyart's favor, that she will be irreparably harmed in the absence of preliminary relief, and that the public interest supports issuance of the preliminary injunction.

### 1. Legal Standard

A plaintiff seeking a preliminary injunction must satisfy four factors: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. Winter v. NRDC, 129 S. Ct. 365, 374 (2008).

### 2. Likelihood of Success on the Merits

NCBE argues that Enyart's requested accommodation is not reasonable, and that it has already offered a series of reasonable accommodations. Opp. at 5-12. Enyart, on the other hand, argues that the "reasonable accommodation" framework simply does not apply to actions taken under 42 U.S.C. § 12189. That section provides that "[a]ny person that offers examinations . . . related to . . . certification . . . shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." The relevant DOJ regulations provide that a test administrator is required to assure that "[t]he examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level . . . rather than reflecting the individual's impaired sensory . . . skills." 28 C.F.R. § 36.309(b)(1)(i). Those regulations also provide that a "private entity offering an examination covered by this section shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that

5

private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." Id. § 36.309(b)(3).

The regulations promulgated under § 12189 do not mention the phrase "reasonable accommodation." While that phrase is used elsewhere in the C.F.R., see e.g. 29 C.F.R. § 1630.9 (2010), those regulations are promulgated under different sections of the U.S. Code, and hence do not apply directly to actions taken under 42 U.S.C. § 12189. Plaintiff asks this Court to look solely at the regulations promulgated under § 12189, particularly the phrase: "best ensure that . . . the examination results accurately reflect the individual's aptitude . . . rather than reflecting the individual's impaired sensory . . . skills" (emphasis added). Plaintiff contends that this phrase obligates NCBE to provide the accommodation that "best ensures" that her performance is not limited by her disability, and that it is not enough for NCBE to simply offer a "reasonable" accommodation.

This is a thorny question. Plaintiff is correct that neither § 12189 nor the accompanying regulations use the term "reasonable accommodation." Therefore, there does not appear to be statutory or regulatory support for adopting that legal framework. However, the "best ensure" phrase is by no means clear. Plaintiff's interpretation appears to be in some conflict with the statutory language itself, which requires only that examinations shall be "accessible to persons with disabilities." 42 U.S.C. § 12189. Indeed, NCBE points to similar language elsewhere in the regulations that has been interpreted by EEOC as "not requir[ing] that an employer offer every applicant his or her choice of a test format. Rather, this provision only requires that an employer provide . . . alternative, accessible tests to [disabled] individuals." 29 C.F.R. Part 1630, App., at 385 (2009). However, this interpretation is offered in commentary on 29 C.F.R. Part 1630, which does indeed utilize the "reasonable accommodation" framework. See 29 C.F.R. § 1630.9 (titled "Not making reasonable accommodation").

This Court declines Plaintiff's invitation to determine whether the "best ensure" language requires a test administrator to offer the "best" available and most comprehensive

6

1 technology in accommodating a disability. Such an interpretation is not necessary to
2 establish Plaintiff's likelihood of success on the merits. Instead, even assuming NCBE's
3 more defendant-friendly standard applies to this case, Enyart has met her burden.

NCBE spends a good portion of its brief disputing Enyart's factual claims that the accommodations offered by NCBE will not permit her to comfortably complete the exam. NCBE points out that in the past Enyart has "successfully utilized a number of different accommodations." Opp. at 2. She used readers and audiotapes during her undergraduate years at Stanford, and used CCTV while working as an administrative assistant before law school. Id. Further, NCBE points out that Enyart used a reader to help her complete her LSAT test prep program, and used audiotapes and the services of a human reader on her examinations. Id.

These factual claims, however, are somewhat beside the point. First, Enyart avers that hers is a progressive condition, so there is no reason to believe an accommodation that may or may not have been sufficient during Enyart's undergraduate coursework[3] would be sufficient. Second, none of those examinations compare to the bar exam, which is an multi-day, eight hour per day examination. Hence, an accommodation that might be sufficient for a law school examination is not necessarily sufficient for the bar exam.[4] Third, the relevant question is not whether Enyart would be able, despite extreme discomfort and disability-related disadvantage, to pass the relevant exams. NCBE points to no authority to support the position that an accommodation which results in "eye fatigue, disorientation and nausea within five minutes, which become fully developed several minutes after that" is "reasonable."

Nor does NCBE dispute Enyart's characterization of her experience with CCTV. Indeed, the medical evidence supports the conclusion that methods of magnification other than ZoomText are not well suited to her particular disability. See Levine Decl. ex. 26,

---

[3] Enyart obtained her undergraduate degree in 1999. Enyart Decl. ¶ 3.

[4] Moreover, Enyart avers that the only law school exam for which she was not permitted use of JAWS and ZoomText was a "disastrous" experience. Enyart Decl. ¶ 8.

7

Report of Dr. Sarraf (ZoomTest and JAWS "are the only way she can fully comprehend the material she reads. . . . For example, if she is using a live reader instead of the software, she is not able to synchronize seeing and hearing the text (which diminishes her comprehension of the material.)"); id. ("If Stephanie was not granted the accommodation to use this software on the entire test . . . she'd completely lose the ability to rely on her residual vision to assist in comprehension of the test material.").

NCBE also places some emphasis on the availability of the pilot program offering the JAWS program. However, as Enyart explains, "[a]lthough the auditory input from the JAWS program facilitates my reading process, it is not sufficient on its own for me to effectively read lengthy or complex text. The problems with just relying on auditory input are compounded when the auditory input is in the form of a human reader rather than the JAWS program." Id. ¶ 16.

The facts as outlined in the attachments to Plaintiff's motion therefore strongly suggest that the accommodations offered by NCBE would either result in extreme discomfort and nausea, or would not permit Enyart to sufficiently comprehend and retain the language used on the text. This would result in Enyart's disability severely limiting her performance on the exam, which is clearly forbidden both by the statute and the corresponding regulation.

NCBE's citation to other regulations and cases does not overcome this factual presentation. First, NCBE cites to 28 C.F.R. § 36.309(b), which provides a definition of "auxiliary aid." Section 36.309(b) provides that such aids may include "[b]railed or large print examinations and answer sheets or qualified readers for individuals with visual impairments." NCBE explains that this tracks the ADA's definition of "auxiliary aids and services" as including "qualified readers, taped texts, or other effective methods of making visually delivered materials available . . . ." 42 U.S.C. § 12102(1)(b) (emphasis added). See also 28 C.F.R. Part 36, App. B, § 36.303, at 726 ("The auxiliary aid requirement is a flexible one," and regulated parties "can choose among various alternatives as long as the result is effective communication." (emphasis added)). As the underlined portions above illustrate, however, the examples offered in the regulation and statute cannot be read as exclusive, nor

8

do those examples support the conclusion that such accommodations are reasonable even where they do not permit effectively communication. On the contrary, the statute and relevant regulations all emphasize access and effective communication. The statute itself illustrates that the central question is whether the disabled individual is able to employ an "effective method[] of making visually delivered materials available." The evidence submitted by Plaintiff strongly suggests that the only auxiliary aid that meets this criteria is a computer with JAWS and ZoomText. While NCBE may be successful at trial in establishing that this is not the case, the record presently before this Court more strongly supports the conclusion that only ZoomText and JAWS make the test "accessible" to Enyart. See 42 U.S.C. § 12189.

Next, NCBE cites to a series of cases in which a plaintiff was denied his or her preferred accommodation, and argues that these cases support the proposition that a plaintiff is not entitled to his or her "preferred" accommodation, but only a "reasonable" accommodation. For example, in Fink v. New York City Department of Personnel, 855 F. Supp. 68 (S.D.N.Y. 1994), two visually impaired individuals sued under the Rehabilitation Act for failure to provide a test in Braille. The court declined to require that accommodation. However, this case is distinguishable. Fink did not concern a plaintiff with evidence that the offered accommodations did not, in fact, accommodate her disability. Instead, the Court concluded that "the accommodations offered by defendants . . . afforded sufficient aid so that plaintiffs' blindness should not have been a disadvantage to them in taking the examination." Id. No such conclusion can be made in this case in light of the evidence submitted by Enyart. The accommodations offered by NCBE would, on the contrary, put Enyart at "a disadvantage . . . in taking the examination." Id. See also Jaramillo v. Professional Exam. Serv., Inc., 2008 NDLR (LRP) LEXIS 205 (D. Conn. 2008) (holding that a given accommodation was reasonable where Plaintiff was granted the accommodation she requested, but later decided that a different accommodation would have been more effective)

It should also be noted that the relevant regulations provide that an examiner "shall provide appropriate auxiliary aids . . . unless . . . [it] would result in an undue burden." 28

9

C.F.R. § 36.309. NCBE, however, does not make an undue burden argument. Instead, relying on reasonable accommodation case law, NCBE argues that "the 'undue burden' issue arises only if a covered entity has failed to offer reasonable accommodations, and then seeks to justify its refusal to provide an accommodation requested by plaintiffs." Opp. at 4-5. Therefore, a holding that provision of JAWS and ZoomText is an undue burden would be inappropriate.

**2. Irreparable Harm**

Enyart argues that "[i]rreparable harm may be presumed when the offending party engages in acts or practices prohibited by federal statute that provides for injunctive relief." Mot at 11. NCBE disagrees, arguing that the Supreme Court's recent Winter decision cuts the other way.

Defendant has the best of this argument. While Enyart is correct that prior cases seem to presume irreparable harm from statutory violations, these same cases alternatively describe their holdings as not requiring a showing of irreparable harm where a statutory violation is concerned. See, e.g., Burlington Northern R.R. Co. v. Wash. Dep't of Revenue, 934 F.2d 1064, 1075 (9th Cir. 1991) ("When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." (emphasis added; citations omitted)). To the extent prior Ninth Circuit case law concluded that irreparable harm need not be shown in certain statutory contexts, that case law is in conflict with Winter. 129 S. Ct. 374.

However, Enyart argues in the alternative that she also satisfies the traditional test for irreparable harm. She cites to D'Amico v. N.Y. State Bd. of Law Examiners, 813 F. Supp. 217 (W.D.N.Y. 1993), which found a threat of irreparable harm in a similar case. That case explained that "[t]he issuance of injunctive relief is appropriate when a disabled person loses the chance to engage in a normal life activity." Id. at 220. That case went on to explain that "[w]hile plaintiff's injury is related to her ability to be admitted to practice law and secure

10

legal employment and income, it goes well beyond these monetary considerations. Plaintiff's injury is the result of ongoing discrimination based on her medical disability." Id.

This analysis is equally persuasive in this case. Enyart argues that in the absence of a preliminary injunction, the time she spent in preparation will have been wasted, she will suffer a serious career setback, will face the prospect of preparing once again at a separate time, and will face the "professional stigma of failure because of her medical disability." Id. See also Chalk v. U.S. Dist. Court Cent. Dist. of Cal., 840 F.2d 701, 710 (9th Cir. 1988) ("Here, plaintiff is not claiming future monetary injury; his injury is emotional and psychological - and immediate. Such an injury cannot be adequately compensated for by a monetary award after trial.").

Given the professional stigma and psychological impact at issue in this case, this Court follows D'Amico and Chalk in concluding that Enyart has established that she is likely to suffer irreparable harm in the absence of preliminary relief.

**3. Balance of Equities**

Enyart argues that the "harm an injunction would cause NCBE is negligible." Mot. at 12. NCBE, however, contends that if the injunctive relief is granted, NCBE will "suffer[] a harm that cannot be undone." Opp. at 13.

NCBE does not adequately support its position. It writes that "[i]f Ms. Enyart or other applicants were to use their own computer with JAWS and ZoomText, NCBE could not prevent the questions from being copied onto the applicant's hard drive, or ensure that the computer is completely wiped clean of all test questions after the examination." Opp. at 13-14. However, the injunction does not permit Enyart to use her own computer, ordering instead that the test be loaded onto NCBE's own device. Moreover, the proposed injunction would apply only to Enyart. Therefore, for purposes of this order, there is no concern with "other applicants." NCBE seeks to alter the balance by supposing that an entire class of individuals would receive the benefit of the injunction, but that is not the case. See also Opp. at 14 (discussing the burden posed by providing computers to sixty test takers). While NCBE's security concerns may indeed be central to its claims under the ADA, particularly

11

whether or not the accommodation would pose an undue burden, there is no reason to think that Enyart herself, the only beneficiary of the injunction, poses a security risk. Moreover, the terms of the injunction itself were the result of a stipulation between the parties, which further suggests that any harm to NCBE has been minimized.

Finally, and perhaps most importantly, this Court notes that Enyart will be ordered to post a $5000 bond. In the event that Enyart loses at trial, that bond will be available to compensate NCBE for the cost of providing a laptop. Therefore, because NCBE's security concerns are addressed by using its own computer, and it will be compensated for the financial expenditure in the event it prevails at trial, it has failed to establish that the equities are in its favor.

**4. Public Interest**

In this context, the question of whether the public interest would be served by the issuance of an injunction turns on the merits analysis. As explained above, the Court is persuaded that failure to provide Enyart's preferred accommodation is likely a violation of the ADA, and the public clearly has an interest in the enforcement of its statutes. See e.g., Jones v. City of Monroe, 341 F.3d 474, 490 (6th Cir. 2003) ("The public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA.").

In light of the statutory interests at stake in this case, this Court concludes that the public interest weighs in favor of the issuance of the injunction.

## CONCLUSION

For the reasons stated above, this Court GRANTS Enyart's motion for a preliminary injunction. Because the MBE portion of the bar exam will be administered at the end of February, Defendant's motion for a stay pending appeal is DENIED. Given the inevitable delay in litigating this question in the circuit court, such a stay would unavoidably prevent Plaintiff from receiving the relief to which this Court believes she is entitled. Bond is set at $5000, to be filed with the Clerk of the Court by February 5, 2010, and deposited into the registry of the Court.

The injunction is ordered as follows:

1. NCBE shall provide Ms. Enyart with the following accommodations on the March 2010 administration of the MPRE:

    (a) Double the standard time
    (b) A private room
    (c) One five minute break every hour
    (d) A scribe to fill in the answers and
    (e) The exam loaded onto a laptop computer equipped with JAWS and ZoomText software

Within two business days of this Order, NCBE shall request ACT to provide Ms. Enyart with sufficient time before the commencement of the test to attach the peripherals and customize the JAWS and ZoomText settings and NCBE shall advise the plaintiff of ACT's response or any lack thereof within five business days thereafter.

Additionally, NCBE shall permit Ms. Enyart to use all of the following during the examination as accommodations, all of which shall be brought to the examination by Ms. Enyart:

    (f) An ergonomic keyboard
    (g) A trackball mouse
    (h) A large monitor
    (i) Her own lamp to control lighting conditions
    (j) Sunglasses
    (k) A yoga mat
    (l) Large print digital clock
    (m) Migraine medication

The ergonomic keyboard, trackball mouse, and monitor shall be devoid of any storage devices or storage mechanisms and NCBE does not guarantee the interoperability of such devices with the computer it provides. The examination shall be administered by ACT with the above accommodations pursuant to the Stipulation Re: Voluntary Dismissal Without Prejudice of Defendant ACT, Inc. filed with the Court on November 25, 2009.

2. With respect to the February 2010 administration of the California Bar exam, NCBE shall provide the State Bar of California, Committee of Bar Examiners with the MBE loaded onto a laptop computer equipped with JAWS and ZoomText software. Decisions with respect to the administration of the examination shall rest with the State Bar of California, Committee of Bar Examiners. However, in the Stipulation Regarding Dismissal Without

Prejudice of Defendant State Bar of California and Order Thereon in this Action, the State Bar of California agreed to furnish the accommodations requested by Ms. Enyart on the MBE portion of the February 2010 California bar examination if the Court in this action determined that such accommodations were required.

**IT IS SO ORDERED.**

Dated: February 4, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE