1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   STEPHANIE ENYART,                      No. C 09-5191 CRB
12            Plaintiff,                    **ORDER GRANTING SECOND**
                                            **PRELIMINARY INJUNCTION**
13      v.
14   NATIONAL CONFERENCE OF BAR
     EXAMINERS, INC.,
15
16            Defendant.
     _____/
17
18          A preliminary injunction has already been issued in this case, and the parties are
19   familiar with the relevant background facts.  Therefore, this order will forego a full recitation
20   of facts and will instead discuss what has changed—and what has not—since the entry of the
21   first preliminary injunction.
22          The current controversy concerns the impact of an unforeseen detail on Plaintiff's
23   attempt to pass the Multistate Bar Examination ("MBE") and Multistate Professional
24   Responsibility Examination ("MPRE").  The parties agree that Plaintiff was not permitted to
25   alter the font type or font size on her examination computer during the administration of the
26   MBE and the MPRE.  The test computer provided by Defendant NCBE displayed the test
27   questions in 12-point Times New Roman font, and the security settings installed by NCBE
28   prevented Plaintiff from altering that setting.  Goldstein Decl. ¶ 3.  Enyart avers that she

"typically read[s] all electronic documents in Ariel 14-point font because it is considerably larger than Times New Roman 12-point font and uses thicker and more sharply defined letters that are easier for me to read." Enyart Decl. ¶ 7.  Because of this, Enyart's "reading speed was reduced and [she] experienced eye fatigue more quickly than I normally do." Id. ¶ 10.  By the end of the second day of the MBE (out of six total days of testing for the Bar Exam), her "eyes had become puffy and irritated from the strain associated with reading in this font over two days." Id. ¶ 13.  On neither day was Enyart able to complete all the questions within the allotted time. Id. ¶¶ 9, 13.

Enyart reports a similar experience with the MPRE, which she took the weekend immediately following the MBE.  She was once again not able to change the font to Ariel 14-point. Id. ¶ 17.  "As with the MBE, reading for an extended period of time in this font slowed down my reading speed, caused my eyelids to become puffy and irritated, and le[t] eye strain and fatigue to develop more quickly than they ordinarily would." Id.  Enyart did not pass the test.

**Discussion**

**1.    Legal Standard**

A plaintiff seeking a preliminary injunction must satisfy four factors: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. Winter v. NRDC, 129 S. Ct. 365, 374 (2008).

**2.    Analysis**

The specifics regarding Enyart's disability have not changed since the last injunction was issued, and the only difference now concerns a detail that no party foresaw being an issue when the first motion was litigated.  Enyart did not predict that the type and size of the font would be "locked down" such that she would be forced to read both a smaller type size, and a font style that is more difficult for her to read.  She has submitted sworn statements that this unfamiliar font caused eye strain and resulted in her not being able to complete all the questions on the test.

**United States District Court**
For the Northern District of California

Defendant, while it does strenuously oppose Enyart's motion for a second injunction, does not focus on the issue of the font. Instead, it seeks to re-visit many of the issues addressed in the first motion, now with a focus on the fact that Enyart has now tried and failed to pass the examination. It argues that Enyart has not shown a risk of irreparable harm, that she is not entitled to her "preferred" accommodation, that she is not likely to succeed, and has not shown that the equities favor her. These arguments were all addressed in the first motion. As discussed further below, this Court sees no reason to alter its previous findings, and those findings are hereby incorporated. Enyart has shown that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that the injunction is in the public interest.

**a.      Irreparable Harm**

Defendant's first argument is that Enyart has not shown a risk of immediate irreparable harm as required under <u>Winter</u>. Defendant takes issue with this Court's prior "holding" that Enyart would suffer psychological harm if she were denied her requested accommodations. Defendant argues that "Enyart has never claimed . . . that she would suffer a psychological injury if she is unable to take [the] examination[s] with her preferred accommodations, much less submitted any evidence supporting such an argument." Opp. at 5.

However, the Court's prior reference to the psychological impact was not an independent factual finding of any clinically defined consequences of denying Enyart's requested accommodations. On the contrary, the reference was merely a shorthand to refer to the various consequences described in Enyart's declaration submitted in support of her first motion for a preliminary injunction. <u>See</u> Dkt. #36, ¶¶ 28-30. These injuries, as with the injuries discussed in <u>Chalk v. U.S. Dist. Court Cent. Dist. of Cal.</u>, 840 F.2d 701, 710 (9th Cir. 1988), and <u>D'Amico v. N.Y. State Bd. of Law Examiners</u>, 813 F. Supp. 217 (W.D.N.Y. 1993), are not compensable with monetary damages. <u>Chalk</u> and <u>D'Amico</u> are both cases where the denial of an injunction would have resulted in an individual "los[ing] the chance to engage in a normal life activity." <u>D'Amico</u>, 813 F. Supp. at 220. <u>Chalk</u> in particular, which

3

is a binding Ninth Circuit case, concerned a teacher suffering from AIDS who was prevented from teaching because of his diagnosis.  His employer sought to reassign him to an administrative position at the same rate of pay and benefits, but Chalk refused the offer and brought a law suit asking for an order "barring the Department from excluding him from classroom duties."  Id. at 704.  Chalk argued that the job he was offered did not utilize his skills, training or experience, and that "[s]uch non-monetary deprivation is a substantial injury which the court was required to consider."  Id. at 709.  The Court cited to discrimination cases and explained that there was ample support for the proposition that Chalk's "non-monetary deprivation is irreparable."  Id.  At its core, Enyart's case is similar to Chalk's.  Enyart, like Chalk, does not cite to any monetary injury, but rather focuses on being prevented from pursuing her chosen profession because of his disability.  Chalk stands for the proposition that such harm can be irreparable for purposes of obtaining a preliminary injunction.

Defendant seeks to distinguish Chalk because it was decided long before the Supreme Court's recent Winter case.  By Defendant's reasoning, because all cases decided prior to 2008 were by definition pre-Winter cases, they have all been overruled in toto.  Winter, of course, overruled the Ninth Circuit's "sliding scale" standard, under which a plaintiff needed to show only a possibility of irreparable injury in some circumstances, as opposed to a likelihood of irreparable injury.  Chalk did indeed recite the pre-Winter "sliding scale" standard, and to that extent is no longer good law.  But whether one applies the "likelihood" standard or the now-defunct "sliding scale" standard, there is no reason to think that the very definition of "irreparable harm" has been altered.  Winter concerns the likelihood of the harm—whether it is merely possible or truly imminent—but does not concern whether or not any particular harm can be termed "irreparable."  Therefore, Winter does not disturb Chalk's discussion of whether certain non-monetary harms are irreparable.

**b.    Likelihood of Success**

As in its opposition to the first motion for a preliminary injunction, NCBE argues that it has fulfilled its obligations under the ADA to "offer its examinations in a place or manner

**United States District Court**
For the Northern District of California

1   accessible to persons with disabilities or offer alternative accessible arrangements for such

2   individuals."  42 U.S.C. § 12189.  It notes that it has offered a series of accommodations,

3   including those listed in the relevant regulations, and that these efforts are by definition

4   sufficient.  NCBE relies primarily on <u>Arizona v. Harkins Amusement Enters., Inc.</u>, 603 F.3d

5   666 (9th Cir. 2010).  <u>Harkins</u> concerned two plaintiffs seeking to force a chain of movie

6   theaters to provide "open" captioning, in addition to other accommodations.  NCBE here is

7   particularly interested in the following quotation: "Entities . . . should be able to rely on the

8   plain import of the DOJ's commentary until it is revised."  <u>Id.</u> at 673.  NCBE argues that it

9   too "should be able to rely" on the examples of auxiliary aids in listed in the regulation.

10          The quotation from <u>Harkins</u>, however, is taken entirely out of context.  <u>Harkins</u>

11   involved a regulation that plainly states that "[m]ovie theaters are not required by § 36.303 to

12   present open-captioned films."  28 C.F.R. pt. 36, App. B(C), at 727 (2009).  Obviously, given

13   clear regulatory guidance that a particular aid is <u>not</u> required, the Court explained that it

14   would be unfair to force a public accommodation to provide such an aid.  However, there is

15   no comparable regulation explicitly providing that testing centers need not provide computer

16   aids.  If there were, this would be a far different case.  On the contrary, the list of aids in the

17   regulations is open ended, including qualified readers, taped texts, or <u>other effective methods</u>

18   of making visually delivered materials available . . . ."  42 U.S.C. § 12103(1)(B) (emphasis

19   added).  The statute clearly informs a testing agency that the listed regulations are not

20   exclusive.

21          The relevant question here is whether the auxiliary aids offered by NCBE make the

22   test's "visually delivered materials available" to Enyart.  As this Court has previously

23   concluded, they do not.  <u>See</u> First Preliminary Injunction at 5-19.  NCBE continues to argue

24   that Enyart is not entitled to her preferred accommodations, and in so doing continues to miss

25   the point.  She does not argue that she simply "prefers" to use JAWS and ZoomText.  On the

26   contrary, she has presented evidence that the accommodations offered by NCBE do not

27   permit her to fully understand the test material, and that some of the offered accommodations

28   result in serious physical discomfort.  CCTV makes her nauseous and results in eye strain,