IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ENYART,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL CONFERENCE OF BAR EXAMINERS, INC.,<br><br>    Defendant. | No. C 09-5191 CRB<br><br>**ORDER GRANTING SECOND PRELIMINARY INJUNCTION** |

A preliminary injunction has already been issued in this case, and the parties are familiar with the relevant background facts. Therefore, this order will forego a full recitation of facts and will instead discuss what has changed—and what has not—since the entry of the first preliminary injunction.

The current controversy concerns the impact of an unforeseen detail on Plaintiff's attempt to pass the Multistate Bar Examination ("MBE") and Multistate Professional Responsibility Examination ("MPRE"). The parties agree that Plaintiff was not permitted to alter the font type or font size on her examination computer during the administration of the MBE and the MPRE. The test computer provided by Defendant NCBE displayed the test questions in 12-point Times New Roman font, and the security settings installed by NCBE prevented Plaintiff from altering that setting. Goldstein Decl. ¶ 3. Enyart avers that she

"typically read[s] all electronic documents in Ariel 14-point font because it is considerably larger than Times New Roman 12-point font and uses thicker and more sharply defined letters that are easier for me to read." Enyart Decl. ¶ 7. Because of this, Enyart's "reading speed was reduced and [she] experienced eye fatigue more quickly than I normally do." Id. ¶ 10. By the end of the second day of the MBE (out of six total days of testing for the Bar Exam), her "eyes had become puffy and irritated from the strain associated with reading in this font over two days." Id. ¶ 13. On neither day was Enyart able to complete all the questions within the allotted time. Id. ¶¶ 9, 13.

Enyart reports a similar experience with the MPRE, which she took the weekend immediately following the MBE. She was once again not able to change the font to Ariel 14-point. Id. ¶ 17. "As with the MBE, reading for an extended period of time in this font slowed down my reading speed, caused my eyelids to become puffy and irritated, and le[t] eye strain and fatigue to develop more quickly than they ordinarily would." Id. Enyart did not pass the test.

### Discussion

**1.   Legal Standard**

A plaintiff seeking a preliminary injunction must satisfy four factors: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. Winter v. NRDC, 129 S. Ct. 365, 374 (2008).

**2.   Analysis**

The specifics regarding Enyart's disability have not changed since the last injunction was issued, and the only difference now concerns a detail that no party foresaw being an issue when the first motion was litigated. Enyart did not predict that the type and size of the font would be "locked down" such that she would be forced to read both a smaller type size, and a font style that is more difficult for her to read. She has submitted sworn statements that this unfamiliar font caused eye strain and resulted in her not being able to complete all the questions on the test.

2

Defendant, while it does strenuously oppose Enyart's motion for a second injunction, does not focus on the issue of the font. Instead, it seeks to re-visit many of the issues addressed in the first motion, now with a focus on the fact that Enyart has now tried and failed to pass the examination. It argues that Enyart has not shown a risk of irreparable harm, that she is not entitled to her "preferred" accommodation, that she is not likely to succeed, and has not shown that the equities favor her. These arguments were all addressed in the first motion. As discussed further below, this Court sees no reason to alter its previous findings, and those findings are hereby incorporated. Enyart has shown that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that the injunction is in the public interest.

### a.  Irreparable Harm

Defendant's first argument is that Enyart has not shown a risk of immediate irreparable harm as required under Winter. Defendant takes issue with this Court's prior "holding" that Enyart would suffer psychological harm if she were denied her requested accommodations. Defendant argues that "Enyart has never claimed . . . that she would suffer a psychological injury if she is unable to take [the] examination[s] with her preferred accommodations, much less submitted any evidence supporting such an argument." Opp. at 5.

However, the Court's prior reference to the psychological impact was not an independent factual finding of any clinically defined consequences of denying Enyart's requested accommodations. On the contrary, the reference was merely a shorthand to refer to the various consequences described in Enyart's declaration submitted in support of her first motion for a preliminary injunction. See Dkt. #36, ¶¶ 28-30. These injuries, as with the injuries discussed in Chalk v. U.S. Dist. Court Cent. Dist. of Cal., 840 F.2d 701, 710 (9th Cir. 1988), and D'Amico v. N.Y. State Bd. of Law Examiners, 813 F. Supp. 217 (W.D.N.Y. 1993), are not compensable with monetary damages. Chalk and D'Amico are both cases where the denial of an injunction would have resulted in an individual "los[ing] the chance to engage in a normal life activity." D'Amico, 813 F. Supp. at 220. Chalk in particular, which

3

is a binding Ninth Circuit case, concerned a teacher suffering from AIDS who was prevented from teaching because of his diagnosis. His employer sought to reassign him to an administrative position at the same rate of pay and benefits, but Chalk refused the offer and brought a law suit asking for an order "barring the Department from excluding him from classroom duties." Id. at 704. Chalk argued that the job he was offered did not utilize his skills, training or experience, and that "[s]uch non-monetary deprivation is a substantial injury which the court was required to consider." Id. at 709. The Court cited to discrimination cases and explained that there was ample support for the proposition that Chalk's "non-monetary deprivation is irreparable." Id. At its core, Enyart's case is similar to Chalk's. Enyart, like Chalk, does not cite to any monetary injury, but rather focuses on being prevented from pursuing her chosen profession because of his disability. Chalk stands for the proposition that such harm can be irreparable for purposes of obtaining a preliminary injunction.

Defendant seeks to distinguish Chalk because it was decided long before the Supreme Court's recent Winter case. By Defendant's reasoning, because all cases decided prior to 2008 were by definition pre-Winter cases, they have all been overruled in toto. Winter, of course, overruled the Ninth Circuit's "sliding scale" standard, under which a plaintiff needed to show only a possibility of irreparable injury in some circumstances, as opposed to a likelihood of irreparable injury. Chalk did indeed recite the pre-Winter "sliding scale" standard, and to that extent is no longer good law. But whether one applies the "likelihood" standard or the now-defunct "sliding scale" standard, there is no reason to think that the very definition of "irreparable harm" has been altered. Winter concerns the likelihood of the harm—whether it is merely possible or truly imminent—but does not concern whether or not any particular harm can be termed "irreparable." Therefore, Winter does not disturb Chalk's discussion of whether certain non-monetary harms are irreparable.

    **b.**    **Likelihood of Success**

As in its opposition to the first motion for a preliminary injunction, NCBE argues that it has fulfilled its obligations under the ADA to "offer its examinations in a place or manner

4

United States District Court
For the Northern District of California

1  accessible to persons with disabilities or offer alternative accessible arrangements for such
2  individuals." 42 U.S.C. § 12189.  It notes that it has offered a series of accommodations,
3  including those listed in the relevant regulations, and that these efforts are by definition
4  sufficient.  NCBE relies primarily on Arizona v. Harkins Amusement Enters., Inc., 603 F.3d
5  666 (9th Cir. 2010).  Harkins concerned two plaintiffs seeking to force a chain of movie
6  theaters to provide "open" captioning, in addition to other accommodations.  NCBE here is
7  particularly interested in the following quotation: "Entities . . . should be able to rely on the
8  plain import of the DOJ's commentary until it is revised." Id. at 673.  NCBE argues that it
9  too "should be able to rely" on the examples of auxiliary aids in listed in the regulation.

10 The quotation from Harkins, however, is taken entirely out of context.  Harkins
11 involved a regulation that plainly states that "[m]ovie theaters are not required by § 36.303 to
12 present open-captioned films." 28 C.F.R. pt. 36, App. B(C), at 727 (2009).  Obviously, given
13 clear regulatory guidance that a particular aid is not required, the Court explained that it
14 would be unfair to force a public accommodation to provide such an aid.  However, there is
15 no comparable regulation explicitly providing that testing centers need not provide computer
16 aids.  If there were, this would be a far different case.  On the contrary, the list of aids in the
17 regulations is open ended, including qualified readers, taped texts, or other effective methods
18 of making visually delivered materials available . . . ." 42 U.S.C. § 12103(1)(B) (emphasis
19 added).  The statute clearly informs a testing agency that the listed regulations are not
20 exclusive.

21 The relevant question here is whether the auxiliary aids offered by NCBE make the
22 test's "visually delivered materials available" to Enyart.  As this Court has previously
23 concluded, they do not.  See First Preliminary Injunction at 5-19.  NCBE continues to argue
24 that Enyart is not entitled to her preferred accommodations, and in so doing continues to miss
25 the point.  She does not argue that she simply "prefers" to use JAWS and ZoomText.  On the
26 contrary, she has presented evidence that the accommodations offered by NCBE do not
27 permit her to fully understand the test material, and that some of the offered accommodations
28 result in serious physical discomfort.  CCTV makes her nauseous and results in eye strain,

5

1  and the use of human readers is not suited to the kind of test where one must re-read both
2  questions and answers, and continually shift back and forth between different passages of
3  text. Dkt #36, ¶ 19, Dkt. #81, ¶ 9. Such accommodations do not make the test accessible to
4  Enyart, and so do not satisfy the standard under the ADA.

5  NCBE also argues that this Court erred in its first order when it concluded that
6  Enyart's prior success on the LSAT without the aid of JAWS and ZoomText indicates that
7  those accommodations are not necessary to provide her with access. This Court noted that
8  the bar exam is an eight-hour per day examination, while the LSAT is only a few hours.
9  NCBE disputes this, noting that the MPRE lasts only two hours and the MBE lasts only six
10 hours. NCBE conveniently ignores the fact that the MBE is not administered in a vaccuum,
11 but rather is typically integrated with two other days of testing. As its lawyers are well
12 aware, the LSAT is a one-day examination, while the MBE is typically the second of three
13 days of testing. See http://www.calbar.ca.gov/calbar/pdfs/admissions/GBX/EX102sf.pdf.
14 Therefore, any comparison between the Bar Examination and the LSAT is of only minimal
15 evidentiary value.

16 Next, NCBE urges this Court to ignore the opinion of Enyart's treating physician, Dr.
17 Sarraf, in favor if its own optometrist's opinion. NCBE points out what it considers to be
18 inadequacies relating to Dr. Sarraf's evidence, such as the fact that he did not testify, that his
19 report "was actually a form that he prepared (or at least appears to have signed) at Ms.
20 Enyart's request," and that the statements in his report "appear simply to repeat what Ms.
21 Enyart presumably told Dr. Sarraf." Opp. at 12. In sum, NCBE asks this court to disregard
22 evidence offered by Enyart's treating physician, suggesting without citing evidentiary
23 support that he merely signed a form prepared by Enyart. Even if he did, there is no reason
24 to believe he was not truthful in his assertions. Given both Enyart's declarations and the
25 evidence supplied by Dr. Sarraf, this Court remains convinced that Enyart has established
26 that she is likely to succeed on the merits. The fact that a non-treating, non-examining
27 witness offers contradicting evidence is not sufficient to outweigh Enyart's evidentiary
28 showing.

6

Finally, NCBE's arguments as to the equities and the public interest are similarly unavailing. On the balance of the equities NCBE urges this Court to take notice of the fact that "additional test takers with visual disabilities demand the same accommodations as Ms. Enyart . . . ." So far as this Court can discern, this is no more than to say that other disabled individuals are seeking to assert their rights under the ADA. NCBE does not concede that these rights are in fact recognized by the ADA, so from their perspective these suits are a burden and a nuisance. However, because these suits simply seek to assert the rights that this Court recognizes, this Court cannot conclude that such suits alter the balance of the equities.

Finally, as to the public interest, NCBE suggests that granting an injunction will undermine the fairness of the test administration. See Opp. at 14 (citing Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 88-89 (2d Cir. 2004)). However, given the specific terms of the injunction, there is no reason to believe there is any fairness impact. NCBE does not actually argue that the requested accommodations would provide Enyart with an unfair advantage, and so a glancing reference to fairness without any such support cannot be persuasive. The public interest is more clearly served by ensuring that those individuals Congress has sought to protect are, in fact, protected. See e.g., Jones v. City of Monroe, 341 F.3d 474, 490 (6th Cir. 2003) ("The public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA.").

Therefore, the parties are ORDERED to do as follows:

1. With respect to the August 2010 administration of the Multistate Professional Responsibility Examination (MPRE), NCBE shall provide ACT with the MPRE loaded onto a laptop computer equipped with JAWS and ZoomText software, with the examination displayed in 14-point Arial font. NCBE shall also direct ACT to provide Ms. Enyart with the following accommodations on the August 2010 administration of the MPRE:

   (a) Double the standard time;
   (b) A private room;
   (c) One five minute break every hour;
   (d) A scribe to fill in the answers.

7

1    NCBE shall deliver the laptop computer to ACT no less than two (2) days prior to the
2    administration of the examination, and request ACT to provide Ms. Enyart with access to the
3    laptop twenty-four (24) hours before the examination to attach her peripherals, customize the
4    JAWS and ZoomText settings, and test the equipment prior to the day the examination is to
5    be taken.  ACT shall be responsible for custody of, and access to, the laptop once it is
6    delivered to ACT.  In the event ACT declines to provide any of the accommodations
7    specified in this order, counsel are to notify the court one week prior to the day of the
8    examination.

    Additionally, NCBE shall direct ACT to permit Ms. Enyart to use all of the following during the MPRE as accommodations, all of which shall be brought to the examination by Ms. Enyart:

- (e) An ergonomic keyboard;
- (f) A trackball mouse;
- (g) A large monitor;
- (h) Her own lamp to control lighting conditions;
- (i) Sunglasses;
- (j) A yoga mat;
- (k) Large print digital clock;
- (l) Migraine medication.

The ergonomic keyboard, trackball mouse, and monitor shall be devoid of any storage devices or storage mechanisms and NCBE does not guarantee the interoperability of such devices with the computer it provides. The MPRE shall be administered by ACT with the above accommodations pursuant to the Stipulation Re: Voluntary Dismissal Without Prejudice of Defendant ACT, Inc., filed with the Court on November 25, 2009.

2. With respect to the July 2010 administration of the California Bar exam, NCBE shall provide the State Bar of California, Committee of Bar Examiners (the "State Bar") with the Multistate Bar Examination (MBE) loaded onto a laptop computer equipped with JAWS and ZoomText software furnished by NCBE, with the examination displayed in 14-point

1 Arial font. NCBE shall deliver the laptop computer to the State Bar no less than two (2) days 2 prior to the administration of the MBE, and request the State Bar to provide Ms. Enyart with 3 access to the laptop twenty-four (24) hours before the examination to attach her peripherals, 4 customize the JAWS and ZoomText settings, and test the equipment prior to the day the 5 examination is to be taken. The State Bar shall be responsible for custody of, and access to, 6 the laptop once it is delivered to the State Bar. All decisions with respect to the 7 administration of the examination shall rest with the State Bar. The MBE shall be 8 administered by the State Bar with the above accommodations pursuant to the Stipulation 9 Regarding Dismissal Without Prejudice of Defendant State Bar of California; Order Thereon 10 filed with the Court on December 9, 2009.

11     3.    Plaintiff shall post an additional cash bond in the amount of $5,000 with the 12 Clerk of the Court by July 1, 2010, and deposited into the registry of the Court.

13 **IT IS SO ORDERED.**

16 Dated: June 22, 2010     CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE