COOLEY LLP
GREGORY C. TENHOFF (154553) (tenhoffgc@cooley.com)
WENDY J. BRENNER (198608) (brennerwj@cooley.com)
LAURA A. TERLOUW (260708) (lterlouw@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:     (650) 843-5000
Facsimile:      (650) 857-0663

FULBRIGHT & JAWORSKI L.L.P.
ROBERT A. BURGOYNE (rburgoyne@fulbright.com)
801 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C. 20004
Telephone:  (202) 662-0200
Facsimile:  (202) 662-4643

Attorneys for Defendant
NATIONAL CONFERENCE OF BAR EXAMINERS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ENYART,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CONFERENCE OF BAR EXAMINERS,<br><br>Defendant. | Case No.  C09-05191 CRB<br><br>**DECLARATION OF WENDY BRENNER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR THIRD PRELIMINARY INJUNCTION**<br><br>Date:        February 11, 2011<br>Time:       10:00 a.m.<br>Courtroom: 8<br>Judge:      Hon. Charles Breyer |

I, Wendy Brenner, declare:

**1.**     I am an attorney licensed to practice law in the State of California.  I am a partner with the firm of Cooley LLP, attorneys of record for Defendant National Conference of Bar Examiners ("NCBE").  I have personal knowledge of the facts contained in this Declaration and could and would testify competently to the same if called as a witness.

**2.**     On March 3, 2010, I received a telephone call from Dan Goldstein, one of Ms. Enyart's attorneys in this matter.  During that call, he expressed to me that he had spoken to my

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

910821 v1/HN

1.

DECL. OF G. TENHOFF ISO NCBE'S OPPOSITION
TO PLF'S SECOND PRELIM. INJUNCTION
C09-05191 CRB

colleague, Gregory Tenhoff, the previous day concerning two requests from Ms. Enyart with respect to the MPRE that she was scheduled to take several days later: (1) access to the MPRE test site the day before the examination for set up purposes; and (2) configuration of the test in Arial 14-point font. Mr. Goldstein said that he had tried to reach Mr. Tenhoff that day, but because Mr. Tenhoff was out of the office for a deposition, he was seeking a response from me.

**3.** Later in the day on March 3, 2010, I telephoned Mr. Goldstein and told him the following: (a) Ms. Enyart's MPRE had already been loaded and sent to Ms. Enyart's testing location, and thus the font could not be changed; (b) NCBE did not control the testing facility, and thus could not provide access to the facility the day before the test; and (c) he should direct the request concerning set up time to ACT, since it controlled access to the testing facility. During this call, Mr. Goldstein asked whom Ms. Enyart should call at ACT concerning Ms. Enyart's test administration. Later that day, on March 3, 2010, I sent Mr. Goldstein an email informing Mr. Goldstein that Ms. Enyart should contact the individual who signed her testing letter from ACT to obtain information about her testing center. A true and correct copy of that email is attached hereto as Exhibit A. Mr. Goldstein replied on March 4, 2010, with an email stating that Ms. Enyart's testing letter did not contain any contact information, but that one of Ms. Enyart's other attorneys had reached out to counsel for ACT for more information. A true and correct copy of that email is attached hereto as Exhibit A.

**4.** Following the Court's June 4, 2010 hearing on Plaintiff's motion for a second preliminary injunction, on June 7, 2010, Mr. Goldstein sent an email to our offices inviting us to "look at the last proposed order we submitted" and provide comments. A true and correct copy of that email is attached hereto as Exhibit B. This email was provided to me by the recipient of the email, my colleague, Gregory Tenhoff, another Cooley LLP partner working on this matter.

**5.** On June 8, 2010, I sent a draft proposed order on Ms. Enyart's motion for a second preliminary injunction to Mr. Goldstein. A true and correct copy of that email is attached hereto as Exhibit C. This draft differed from the proposed terms for Ms. Enyart's first preliminary injunction because it specified that the examination would be in Arial 14-point font; the laptops would be delivered two days before the examinations; and Ms. Enyart would be able to access the

1  laptop at least twenty-four hours before the examinations.

2      **6.** On June 10, 2010, I received an email from Anna Levine, one of Ms. Enyart's
3  attorneys in this matter, which attached a revised draft of the proposed injunction language that I
4  had sent to Mr. Goldstein. A true and correct copy of that email is attached hereto as Exhibit D. I
5  responded to Ms. Levine's message on June 14, 2010, with an email stating that her changes were
6  "generally fine," and that I had only minor additional revisions to the document. A true and
7  correct copy of that email is attached hereto as Exhibit E. Ms. Levine replied on June 14, 2010
8  with an email stating that my further changes were acceptable. A true and correct copy of that
9  email is attached hereto as Exhibit F.

10      **7.** On August 2, 2010, our offices received an email from Larry Paradis, another
11  attorney representing Ms. Enyart in this matter. This email was provided to me by Mr. Tenhoff's
12  assistant as Mr. Tenhoff was traveling on vacation. The email stated that Ms. Enyart had just
13  completed the MBE, and had "encountered technical difficulties again," although the problems
14  were "different that those she encountered during the previous test administration." Mr. Paradis's
15  email stated that the problem related to a "lack of synchronization between the JAWS and
16  ZoomText programs" that resulted in "difficulties wherein the cursor on the ZoomText screen
17  was not matching up to the material being read out loud by the JAWS program." Mr. Paradis's
18  email further stated that the problems were "intermittent in that when Ms. Enyart first inputted the
19  settings on the programs, the two programs would work properly together for a while, but then
20  after a period of time they would stop coordinating." Mr. Paradis's email stated that one
21  "possible reason" for the problem was an antivirus program that had not been renewed. Mr.
22  Paradis's email was directed to ACT, and requested assistance from ACT relating to the MPRE
23  that Ms. Enyart was scheduled to take several days later. Specifically, Mr. Paradis's email
24  requested the following: (1) that ACT ensure any antivirus software on the computer would be
25  updated or deleted; (2) that the operating system would be Windows XP; (3) that the computer
26  would be checked to ensure that the programs were working together properly; and (4) that the
27  ACT personnel present at the set up have "administrative privileges" for the laptop so that any
28  problems could be fixed. A true and correct copy of that email is attached hereto as Exhibit G.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

910821 v1/HN      3.      DECL. OF WENDY BRENNER ISO NCBE'S
OPPOSITION TO PLF'S THIRD PRELIM.
INJUNCTION

8. On August 2, 2010, our offices received a second email from Mr. Paradis, which was also provided to me by Mr. Tenhoff's assistant. The second email inquired whether NCBE "will have its IT personnel available" during Ms. Enyart's set up and testing and "provide the administrative privileges password if that is needed." A true and correct copy of that email is attached hereto as Exhibit H.

9. On August 3, 2010, I sent an email to Mr. Paradis stating that NCBE's IT person was "on standby and ready to help ACT as necessary." A true and correct copy of that email is attached hereto as Exhibit I.

10. On August 5, 2010, I received an email message from Mr. Paradis asking if I could instruct NCBE's IT personnel to call Ms. Enyart's technical advisor because Ms. Enyart had encountered "the technical difficulty" that remained "a problem." A true and correct copy of that email is attached hereto as Exhibit I. Within the hour, I responded to Mr. Paradis's message directing him to instruct Ms. Enyart's IT consultant to contact Derek Binkley at NCBE, and further providing Mr. Binkley's contact information. A true and correct copy of that email is attached hereto as Exhibit J.

11. On December 3, 2010, the Court held a motion on NCBE's Motion to Continue the Trial Date. I was informed by my colleague, Mr. Tenhoff, that following the hearing, Ms. Levine told Mr. Tenhoff that with respect to a third preliminary injunction, Ms. Enyart wanted modifications to the previous injunctions to address the technical issues that had arisen during the previous administrations of the examinations. On December 8, 2010, I called Ms. Levine to meet and confer regarding the terms of a third preliminary injunction for Ms. Enyart. I left her a message asking her to call me back.

12. Following my call to her, on December 8, 2010, I received an email from Ms. Levine setting forth a proposal to address technical issues reported by Ms. Enyart on the July 2010 MBE and August 2010 MPRE. A true and correct copy of that email is attached hereto as Exhibit K. Ms. Enyart's "technical proposal" centered around Ms. Enyart providing the laptop for the MBE, as opposed to NCBE providing the laptop, and further involved NCBE shipping the secure test questions on a CD.

Cooley LLP
Attorneys At Law
Palo Alto

910821 v1/HN

4.

DECL. OF WENDY BRENNER ISO NCBE'S
OPPOSITION TO PLF'S THIRD PRELIM.
INJUNCTION

13. On December 9, 2010, I sent Ms. Levine an email stating that I would call her later that day to discuss the "technical proposal," but that NCBE would not permit Ms. Enyart to use her own computer on the February 2011 MBE. I further reiterated that NCBE did not oppose the same terms that had previously been agreed to. A true and correct copy of that email is attached hereto as Exhibit L.

14. On December 9, 2010, I received an email from Ms. Levine in response to my email. A true and correct copy of that email is attached hereto as Exhibit M. In her email, Ms. Levine clarified that Ms. Enyart was not seeking to use "her own computer," but rather she was proposing that she would purchase a new computer that she would provide to NCBE preloaded with her preferred software and peripheral drivers.

15. Later that day, on December 9, 2010, I had a telephone conversation with Ms. Levine concerning Ms. Enyart's technical proposal. During that call, I told Ms. Levine that NCBE could not agree to Ms. Enyart's technical proposal because it created additional complexity, without any promise of improved results, and would most likely result in additional problems. I further reminded Ms. Levine that it was not clear what caused the synchronicity problems on the July and August administrations of the examinations, and that the reported problems were not present when the NCBE tested the laptop before shipping. In response to these concerns, Ms. Levine suggested that one potential solution was to allow Ms. Enyart to set up her equipment at the beginning of the California Bar examination, as opposed to immediately prior to the MBE portion of the exam.

16. Following this telephone call, I received an email from Ms. Levine setting forth a new proposal. A true and correct copy of that email is attached hereto as Exhibit N. In that proposal, Ms. Levine stated that Ms. Enyart would be willing to use NCBE's computer "provided she has adequate time and support beforehand to ensure that the software is working and everything is set up, so that she does not need to deal with technological issues in the middle of the examination week." Ms. Levine further stated that "an alternative proposal that would address her concerns is that we largely keep to the terms of the second preliminary injunction, but extend the time and support for set up prior to the examination." Ms. Levine then set forth a

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

910821 v1/HN                                   5.                     DECL. OF WENDY BRENNER ISO NCBE'S
                                                                     OPPOSITION TO PLF'S THIRD PRELIM.
                                                                     INJUNCTION

1  proposal whereby NCBE would make the laptop available on February 17, 2011 for inspection by Ms. Enyart and a "tech person of [her] choice" to set up and test the computer. Ms. Levine further stated that the inspection would need to involve someone "who has administrative privileges to alter programs on the laptop, if necessary." Ms. Levine's proposal then requested that computer be made available on February 21, 2011 for a second inspection, and that "[f]rom that time forward until Stephanie takes the MBE portion of the exam…the NCBE laptop would remain set up with the peripherals."

**17.** Following receipt of that email, I received a second email from Ms. Levine on December 9, 2010, providing a list of specific software versions that Ms. Enyart wanted for the examination. A true and correct copy of that email is attached hereto as Exhibit N.

**18.** On December 20, 2010, I sent a letter to Ms. Levine and Mr. Paradis, a true and correct copy of which is attached hereto as Exhibit O. This letter set forth NCBE's response to Ms. Enyart's proposals of December 9, 2010. Specifically, the letter stated the following:

**(a)** NCBE would make the NCBE-provided laptop available to Ms. Enyart for inspection and set-up on February 17, 2011, and provide her with access again on February 21, 2011.

**(b)** Provided the California State Bar could manage storage and ensure security, NCBE would permit the laptop computer to remain set up from February 21, 2011 until Ms. Enyart takes the MBE on February 26 and 27, 2011.

**(c)** NCBE would make an NCBE representative available by telephone on February 17, 2011 and February 21, 2011, at a pre-established, mutually convenient time between 8:30 a.m. and 4:00 p.m. CST, to assist Ms. Enyart with troubleshooting any technical or compatibility issues.

The letter further confirmed that for security reasons, NCBE would not provide administrative privileges to anyone.

**19.** On December 21, 2010, I received a letter from Ms. Levine, responding to my letter of December 20, 2010. A true and correct copy of that email is attached hereto as Exhibit P. In that letter, Ms. Levine stated that any preliminary injunction order "must include

the opportunity for someone with administrative privileges to address any problem that requires such privileges."

20. On December 22, 2010, I sent a letter to Ms. Levine and Mr. Paradis, a true and correct copy of which is attached hereto as Exhibit Q. This letter responded to Ms. Enyart's requests concerning specific software versions. Specifically, the letter stated that NCBE was willing to work with Ms. Enyart on obtaining her preferred software versions, however, not all such versions were still available and thus NCBE required additional instructions from Ms. Enyart.

21. On December 23, 2010, I sent another letter to Ms. Levine, a true and correct copy of which is attached hereto as Exhibit R. This letter responded to Ms. Levine's letter of December 23, 2010 concerning administrative privileges. Specifically, the letter reiterated that NCBE would not delegate administrative privileges.

22. On December 29, 2010, I received a letter from Ms. Levine, a true and correct copy of which is attached hereto as Exhibit S. In that letter, Ms. Levine responded to NCBE's earlier request for additional guidance concerning Ms. Enyart's preferred software versions. Specifically, the letter stated that because "the newer versions [of JAWS and ZoomText] do not work reliably together," Ms. Enyart preferred to use a combination of JAWS and MAGic (the magnification product produced by the manufacturer of JAWS).

23. On January 5, 2011, I received another letter from Ms. Levine, a true and correct copy of which is attached hereto as Exhibit T. In this letter, Ms. Levine again articulated Ms. Enyart's request that NCBE delegate administrative privileges for the laptop provided to Ms. Enyart for the February 2011 MBE, and further stated for the first time that the laptops previously provided by NCBE were not in "working order."

24. Due to the impasse between the parties, on January 7, 2011, we invited Ms. Enyart's counsel to speak directly to NCBE's technical staff so that they could explain to Ms. Enyart's counsel directly the nature of the technical issues raised by Ms. Enyart's request for delegation of administrative privileges. I was informed by NCBE that NCBE employees Kent Brye and Derek Binkley had a telephone conversation on January 7, 2011 with technical

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

910821 v1/HN

7.

DECL. OF WENDY BRENNER ISO NCBE'S
OPPOSITION TO PLF'S THIRD PRELIM.
INJUNCTION

1  personnel at the National Federation of the Blind, who are apparently consulting with Ms. Enyart and/or her counsel on these technical issues.

25.   Following this conversation, on January 10, 2011, I spoke to Ms. Levine, who told me that despite the telephone conversation between NCBE personnel and Ms. Enyart's technical team, Ms. Enyart continued to believe that the delegation of administrative privileges was necessary, and that any security issues could be overcome.

26.   On January 11, 2011, I again telephoned Ms. Levine, and conveyed that NCBE was willing to schedule another call between the Parties' technical personnel, provided that the participant for Ms. Enyart was the actual technical expert who would be present for the exam set up; and (2) NCBE was willing to pre-test Ms. Enyart's peripherals, provided she identifies what she intends to use and they can be obtained. On January 11, 2011, I received a letter from Ms. Levine, a true and correct copy of which is attached hereto as Exhibit U, rejecting these proposals.

27.   Following receipt of Ms. Levine's January 11, 2011 letter, I telephoned Mr. Goldstein to explore whether there was any remaining way to resolve this issue. Mr. Goldstein responded to my voicemail with an email on January 12, 2011 offering to discuss this matter with me directly. A true and correct copy of Mr. Goldstein's email is attached hereto as Exhibit V.

28.   Mr. Goldstein and I conferred by telephone on January 12, 2011. During that discussion, Mr. Goldstein told me that although he appreciated the offer to pre-test Ms. Enyart's peripherals, the parties would remain at an impasse unless NCBE could guarantee that administrative privilege would be granted in the event the laptop did not function to her standards upon receipt and there was some reason to believe the problem could be fixed with the application of administrative privileges. I communicated to Mr. Goldstein during our telephone call that NCBE could not agree to these terms.

29.   On January 13, 2010, I sent a letter to Ms. Levine further clarifying NCBE's position on these issues, a true and correct copy of which is attached hereto as Exhibit W.

//

//

Executed this 20th day of January, 2011 in Palo Alto, California.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

\_\_/S/_____
Wendy Brenner

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

910821 v1/HN

9.

DECL. OF WENDY BRENNER ISO NCBE'S
OPPOSITION TO PLF'S THIRD PRELIM.
INJUNCTION