# EXHIBIT W

# Brenner, Wendy

| | |
|---|---|
| **From:** | Augustino, Robin on behalf of Brenner, Wendy |
| **Sent:** | Thursday, January 13, 2011 2:40 PM |
| **To:** | alevine@dralegal.org |
| **Cc:** | Brenner, Wendy |
| **Subject:** | Enyart v. NCBE |

Counsel –

Please see the attached correspondence.



01-13-11 Ltr.
A. Levine fro

**Robin (Romine) Augustino**
Legal Secretary to Wendy Brenner~Joshua Mates~Scott Petersmeyer
Cooley LLP
Five Palo Alto Square • 3000 El Camino Real
Palo Alto, CA  94306-2155
Direct: (650) 843-5233 • Fax: (650) 849-7400
Email: raugustino@cooley.com • www.cooley.com

1



Wendy J. Brenner
(650) 843-5371
brennerwj@cooley.com

VIA EMAIL AND US MAIL

January 13, 2011

Anna Levine, Esq.
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, CA 94704

RE: *Enyart v. National Conference of Bar Examiners*

Dear Ms. Levine:

This letter responds to your January 11, 2011 letter regarding the parties' recent discussions concerning administrative privileges on the February 2011 administration of the MBE.

Given that the parties have not resolved this issue informally, NCBE seeks in this letter to ensure that its position is clear and to correct the record in several critical regards.

**First**, we are surprised at Ms. Enyart's apparent outrage that NCBE is not willing to "guarantee the interoperability" of her peripherals and the NCBE-provided laptop. The Court has issued two previous injunctions in this matter, and each order expressly made clear that NCBE would **not** be responsible for the interoperability of the peripherals. The February 3, 2010 stipulation filed by the parties included specific language to this effect: "The ergonomic keyboard, trackball mouse, and monitor shall be devoid of any storage devices or storage mechanisms and NCBE does not guarantee the interoperability of such devices with the computer it provides." This language was adopted verbatim in the Court's February 4., 2010 Order. This same language was included in the parties' June 14, 2010 stipulation and again adopted verbatim in the Court's June 22, 2010 Order. That NCBE will not assume responsibility for the peripherals should not come as a surprise. Ms. Enyart has never previously made this request and, indeed, has never even hinted that NCBE should assume this responsibility. Rather, this issue has been addressed and handled differently in the previous two injunctions.

**Second**, your letter suggests that NCBE violated the previous Court orders based upon the issues Ms. Enyart reported on the earlier administrations. We remind you that Ms. Enyart has stipulated to the Ninth Circuit pursuant to Rule 11 that both of the earlier administrations were "*in accordance with the Court's order*":

- Ms. Enyart's March 16, 2010 Motion to Supplement the Record stated the following: "Ms. Enyart took the MBE portion of the California Bar Examination on February 27 and 28, 2010, and the MPRE on March 6, 2010, both in accordance with the terms of the preliminary injunction granted by Judge Breyer in this case."

- The Parties' August 12, 2010 Joint Motion to Supplement the Record stated the following: "Ms. Enyart took the MBE portion of the California Bar Examination on July



Anna Levine
January 13, 2011
Page Two

    31, and August 1, 2010, and the MPRE on August 6, 2010, both in accordance with the terms of the preliminary injunction granted by Judge Breyer on June 22, 2010."

In light of these representations, Ms. Enyart cannot now assert that NCBE has not complied with the Court's Orders. NCBE has fully complied with the Orders.

**Third**, it is disingenuous for Ms. Enyart (or her counsel) to claim that the laptop provided by NCBE in July 2010 did not arrive "in working order." We were extremely disturbed to see that assertion set forth in a declaration under oath filed with the Court because it is simply not true. With each of the previous administrations, NCBE loaded the requested software, performed extensive testing, and shipped the computers in perfect working order. There were no problems apparent with the software or hardware before the computers were shipped. NCBE will submit declarations to the Court under oath to this effect. We understand that Ms. Enyart reported issues with the laptop upon set up, but she has never asserted, nor can she, that the computers were not in working order before she began making adjustments and/or attaching her peripherals. Any issues that arose occurred **after** she attached her peripherals and **after** she modified the settings. NCBE has never assumed responsibility for the effects of her peripherals or adjustments because it has no control over these variables, nor Ms. Enyart's adjustments to the computers.

**Fourth**, much of your attention has been focused on the issues Ms. Enyart reported on the last administration, however, there is no basis for asserting that those issues affected her performance on the test. Our testing records indicate that despite the issues reported during set up, Enyart did, in fact, utilize these programs to complete all test questions. Indeed, Ms. Enyart herself, in a conversation with an NCBE IT employee on August 5, 2010, reported that a problem did not occur until several hours into the MBE. Again, NCBE is prepared to submit declarations under oath to the Court to this effect. If Ms. Enyart runs into similar problems on the next administration, she can request "stop the clock" breaks from the California Bar, which will accommodate any loss of time in the unanticipated event of a problem.

Despite NCBE's rejection of Ms. Enyart's claims, NCBE is nevertheless willing to assist Ms. Enyart with any issues encountered upon set up. To that end, NCBE has offered numerous solutions:

- The laptop will be loaded with the exact software bundle prescribed by Ms. Enyart: Windows XP, Word 2003, JAWS version 12 and MAGic version 11 software.
- The examination will be displayed in 14-point Arial font.
- Before NCBE ships the laptop, it will test the laptop using the same peripherals that Ms. Enyart plans to use, assuming she identifies them and NCBE can obtain them. (Alternatively, she can provide NCBE with the exact peripherals that she wants to use, which NCBE can ship with the laptop.)
- NCBE can deliver the laptop to the State Bar for arrival on or before February 17, 2011, and ask the State Bar to make the laptop available to Ms. Enyart and a technical expert



Anna Levine
January 13, 2011
Page Three

of her choice on February 17, 2011 to attach her monitor, keyboard and mouse, customize the software settings, and test the functionality of the equipment.

- NCBE can ask the State Bar to make the laptop available to Ms. Enyart and her expert again on February 21, 2011 for set up in the secure testing area to again attach the peripherals, customize the software settings, and test the functionality of the equipment.

- NCBE will make an NCBE representative knowledgeable about the configuration of the laptop available by telephone on February 17, 2011, and February 21, 2011, at a pre-established, mutually convenient time between 8:30 a.m. and 4:00 p.m. CST, to work with Ms. Enyart and her technical expert on troubleshooting any technical or compatibility issues.

- NCBE is willing to permit the laptop to remain set up with the peripherals connected in the testing room from February 21, 2011 through the administration of the MBE to Ms. Enyart on February 26 and 27, 2011. This assumes California's agreement and assurance that the laptop will be kept in secure storage.

Assuming Ms. Enyart proceeds with her anticipated motion, NCBE will not object to the inclusion of these terms in the Court's order. NCBE believes that all of these steps together will minimize the likelihood of any problems upon set up and, further, will present Ms. Enyart with more than adequate support should any problem arise.

As previously communicated, however, NCBE will *not* grant administrative privileges to Ms. Enyart's technical expert. As we have described to you on several occasions, this solution presents significant security issues:

- Granting administrative privileges to a third party would allow that third party to install and uninstall the software on computer. This would mean that that NCBE would have no control over what data is placed on the computer, or removed from the computer.

- The third party could enable features that NCBE purposely disabled, such as Internet and USB drive connections, which of course are essential precautions to prevent security breaches. Similarly, the third party could disable anti-virus software, leaving the computer vulnerable to the installation of unauthorized and undetectable malware.

- Once certain software was removed – such as device drivers – because such software cannot be shipped, it would have to be downloaded from the Internet, and attaching the laptop to the Internet means that the confidential test questions on the laptop are not secure.

- The terms of NCBE's software licenses prohibit NCBE from shipping the original installation media or share our licensing and registration keys.

In light of these problems, it should be obvious why NCBE is rejecting the delegation of administrative privileges. This is a drastic solution to a problem that does not yet exist. Furthermore, it is worth noting that no one has been able to say definitively that even if administrative privileges had been delegated on the last examination, they could have been



Anna Levine
January 13, 2011
Page Four

applied to solve the issues reported by Ms. Enyart. I note that representatives of the National Federation of the Blind, in conferring with NCBE IT employees by telephone on January 7, 2011, volunteered that JAWS and MAGic (from the same vendors) are designed to work together, eliminating the compatibility issues that are possible with Ms. Enyart's previous choice of configuration (JAWS from one vendor and ZoomText from another).

We remain willing to discuss these issues further, and to continue the brainstorming process. Nevertheless, if Ms. Enyart decides to proceed with her motion, NCBE expects that this letter be submitted to the Court as evidence of the parties' negotiations.

Sincerely,

Cooley LLP

Wendy J. Brenner

910491 v3/HN