**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHANIE ENYART,

      Plaintiff,

      v.

NATIONAL CONFERENCE OF BAR
EXAMINERS,

      Defendant.

_____/

Case No. CV 09-05191 CRB (JCS)

**REPORT AND RECOMMENDATION RE
PLAINTIFF'S MOTION FOR AWARD
OF ATTORNEYS' FEES AND COSTS**

**[Docket No. 169]**

## I.    INTRODUCTION

Stephanie Enyart ("Plaintiff") brought this action against the National Conference for Bar Examiners, Inc. ("Defendant"), claiming violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51, *et seq*. Plaintiff, who is legally blind, requested a set of accommodations on the professional licensing exams required to become a member of the California state bar. The Court entered two preliminary injunctions (Dkts. 58, 89) ordering Defendant to provide Plaintiff her required accommodations on the multiple choice Multistate Bar Exam ("MBE") and the Multistate Professional Responsibility Exam ("MPRE"). The Court of Appeals for the Ninth Circuit upheld both injunctions. Dkt. 113. Defendant's petition for writ of certiorari was denied. Dkt. 162. After Plaintiff passed the MPRE, the Court granted Plaintiff summary judgment with regards to the MBE accommodations. Dkt. 164. Plaintiff now brings a Motion for Attorneys' Fees and Expenses (the "Motion"). Plaintiff seeks an award of $3,177,268.23 in merits fees, which includes a 1.7 multiplier, $75,569.81 in costs, and $197,281.30 in fees on fees. Defendant does not dispute that Plaintiff is entitled to an award of reasonable attorneys' fees and costs, but challenges the amounts sought by

**United States District Court**
For the Northern District of California

Plaintiff counsel in the Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (the "Opposition").  For the reasons stated below, the Court RECOMMENDS that the Motion be GRANTED IN PART and DENIED IN PART.

## II.   THE MOTION

As a prevailing party under the ADA, 42 U.S.C. § 12205, and the Unruh Act, Cal. Civ. Code § 52(a), Plaintiff seeks to recover costs and attorneys' fees under Cal. Gov't Code.  Plaintiff was represented by three firms throughout the course of the litigation: Disability Rights Advocates ("DRA"); Brown, Goldsteing, and Levy, LLP ("BG&L"); and LaBarre Law Offices.   Plaintiff also enlisted the assistance of the Mills Legal Clinic at Stanford Law School (the "Clinic") in responding to Defendant's petition for a writ of certiorari to the United States Supreme Court.  In support of the Motion, each firm and the Clinic has submitted a declaration with an accompanying summary of hours and costs claimed to have been reasonably incurred in connection with *Enyart v. NCBE* and the Motion through November 15, 2011.[1]  Plaintiff further supports her requested fees and costs with the Declaration of William F. Alderman, Dkt. 176, ("Alderman Decl."), Declaration of Sanford Jay Rosen, Dkt. 177, ("Rosen Decl."), and the Declaration of Richard M. Pearl, Dkt. 178, ("Pearl Decl.").

In its opposition brief, Defendant does not dispute that Plaintiff is entitled to reasonable attorney's fees and costs under the ADA or the Unruh Act.  Opposition at 3.  Defendant does, however, dispute the reasonableness of the hours for which Plaintiff has billed and the hourly rate for each of Plaintiff's litigation team members.  *Id.*  Specifically, Defendant argues that the number of hours for which Plaintiff's counsel can be compensated should be reduced because Plaintiff's time entries are: (1) duplicative, (2) block-billed, (3) excessive, and (4) includes hours spent on non-

---

[1]  Although the Motion was filed on December 5, 2011, Plaintiff did not submit her counsel's complete billing records regarding the Motion until she filed her Reply.  Plaintiff's Motion states that the total for fees on fees "is $11,360 through November 15, 2011.  This figure will be updated in Plaintiff's reply papers to cover work after November 15 in preparing the reply papers."  Motion at 21.  Plaintiff's Reply, however, states that the final amount for fees on fees is $197,281.30, which includes substantial work on the original Motion.  *See* Paradis Reply Decl. Ex. A.  Defendant filed an objection to Plaintiff's submission of this new evidence supporting the fees on fees request in her Reply.  Defendant's Objections to Evidence Submitted by Plaintiff in Reply Declarations ("Defendant's Reply Objections").   The Court ordered supplemental briefing, discussed *infra*, on the fees on fees work included in the Reply.

United States District Court

For the Northern District of California

recoverable clerical tasks. *Id.* at 5-11. Defendant also argues that Plaintiff's requested hourly rates are unreasonably high and should be reduced to comport with rates for comparable litigation and with rates previously sought by her attorneys. *Id.* at 13-15. Defendant argues that the lodestar calculation of fees should be $681,168 after adjusting the hours and the hourly rates. *Id.* at 25. Defendant's supporting evidence includes the Declaration of Laura Terlouw, Dkt. 195, ("Terlouw Decl."), which contains, among other items, a spreadsheet indicating Plaintiff's time entries to which Defendant objects. Defendant further supports its Opposition with the Declaration of Andre E. Jardini, Dkt. 196, ("Jardini Decl.").

Beyond the lodestar figure's compensation for actual time spent, Plaintiff requests a multiplier of 1.7 based on (1) the novelty, difficulty, and complexity of the questions involved, (2) the lawyers' skill in presenting them, (3) counsel's preclusion from taking on other work, (4) the contingent nature of the fee award, and (5) the results obtained in the action. Motion at 15-20. Plaintiff supports her request with Sanford Jay Rosen's opinion that because Plaintiff's counsel DRA took this case on a wholly contingent basis, accepting responsibility for advancing costs and bearing the potential risk of losing, a multiplier is justified as an incentive for experienced attorneys to take on civil rights cases. *See* Rosen Decl., ¶¶ 21-25. Plaintiff also contends that the case was "of a highly contingent nature for BG&L . . . ." Motion at 18. Plaintiff states that BG&L is essentially the legal arm of the National Federation of the Blind ("NFB"), which paid BG&L for its work on this case "on an hourly basis at rates lower than those requested herein." Declaration of Daniel Goldstein in Support of Plaintiff's Motion for Attorney's Fees, Dkt. 174, ("Goldstein Decl."), ¶ 30.

Defendant argues that Plaintiff's counsel should not be awarded a multiplier because (1) Plaintiff's case rested largely on her ADA claim, under which a multiplier is not allowed, (2) no contingent risk existed for BG&L and LaBarre Law Offices, (3) DRA receives funding for bringing lawsuits of the character involved here, (4) Plaintiff's counsel was not significantly precluded from taking other work, (5) the legal issues and facts of the case lacked complexity, (6) the results obtained were not exceptional, and (7) the cases to which Plaintiff's counsel points as examples of attorneys who were rewarded with a multiplier for performing similar work are not analogous to the

3

**United States District Court**
For the Northern District of California

instant case. Opposition at 19-24. Defendant argues that the Court should exercise its discretion to not only reduce the lodestar amount but to refrain entirely from applying a multiplier. *Id*.

With respect to the costs incurred by Plaintiff's counsel, Plaintiff has provided the Court with a figure of $75,569.81.[2] Reply, 15. Defendant argues that Plaintiff is not entitled to the full amount of costs. Opposition at 17-18. Defendant specifies that (1) travel costs incurred by attorneys to merely observe depositions or hearings are excessive and unreasonable, (2) the $214.50 in travel costs for Plaintiff to travel from Berkeley to San Francisco for her deposition is unexplained, (3) $5,940 in expert fees paid to "Expert Engagements, LLC," and $5,000 in expert fees paid to "University of California Board of Regents" is unsupported by any evidence as to who the experts were or the purpose for their retention, (4) $85 for expert Fredric Shroeder's "August 2011 Reimbursement" is unexplained given that Defendant has already reimbursed Mr. Shroeder, and (5) $11,845.29 for expert Bruce Britton is unwarranted based on Defendant having already reimbursed Mr. Britton $6,600. *Id.*

## III.  LEGAL STANDARD

A prevailing plaintiff may petition for attorney's fees under the fee-shifting provisions of the ADA, and the Unruh Act. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). The Court may award such attorney's fees at its discretion. *See Id.*

Both federal and California courts have adopted the "lodestar" method for calculating reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010). The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Greene v. Dillingham Constr. N.A.*, 101 Cal. App. 4th 418, 422 (2002). To determine whether Plaintiff's claimed hours are reasonable, the Court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley*, 461 U.S. at 434.

---

[2]  In response to certain objections in Defendant's Opposition, Plaintiff reduced the amount of costs from the $80,580 requested in her Motion. *See* Reply Declaration of Daniel F. Goldstein ("Goldstein Reply Decl."), ¶ 8; Reply Declaration of Laurence W. Paradis ("Paradis Reply Decl."), ¶ 9. This amount also includes minor costs incurred since the filing of the Motion. Paradis Reply Decl. Exh.B; Goldstein Reply Decl. Exh. B.

**United States District Court**

For the Northern District of California

The Court must assess whether the hours claimed are vague, block-billed, excessive and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *See Navarro v. Gen. Nutrition Corp.*, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005). To assist the Court with this exercise of its discretion, "'[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)).  Fee applicants generally provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g., Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (holding that affidavits of four practitioners in the community were sufficient to establish reasonable rate of $250.00 per hour even though attorney had only billed $150.00 per hour).  Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that rate set by district court based, in part, on the rate awarded to same attorney in another case, was reasonable).  In calculating the lodestar amount, the Court considers any relevant factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).[3]

Federal law does not permit the application of multipliers in actions brought under fee-shifting statutes like the ADA, but California law does. *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) (citing *City of Burlington v. Dague*, 505 U.S.

---

[3] In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  526 F.2d at 70.

557, 566 (1992); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001)). "When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk." *Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007) (citing *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995)). In determining an appropriate multiplier, California courts evaluate several factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132.

## IV.     ANALYSIS

### A.     Reasonableness of Hourly Rates

Plaintiff's counsel are entitled to compensation at the prevailing market rate for attorneys of similar skill and experience. *Serrano v. Unruh*, 32 Cal. 3d. 621, 643 (1982). Plaintiff has submitted declarations detailing her counsel's extensive experience in complex civil rights litigation, and their handling high profile and precedent setting cases. Messrs. Paradis, Goldstein, LaBarre, and Russell all submit declarations attesting to their own high level of experience and to the experience of each attorney at their respective firms who worked on the case. *See* Paradis Decl.; Goldstein Decl.; LaBarre Decl.; Russell Decl. Plaintiff also submits the declarations of Messrs. Alderman, Rosen, and Pearl, who all testify that, based on their own extensive backgrounds and knowledge, the rates charged by each attorney, law clerk, and paralegal is well within the market rate for impact litigation cases in the Bay Area. *See* Alderman Decl., ¶¶ 13-16; Rosen Decl., ¶¶ 2-5; Pearl Decl., ¶ 10. The declarations further attest to counsel's strong reputation in the legal community and history of success in cases similar to the one here. *Id.* Plaintiff also argues that her counsel's rates are reasonable because in *Elder*, a similar case, this Court awarded Plaintiff's counsel similar rates based on 2010 figures. Motion at 13 (citing *Elder v. Nat'l Conference of Bar Exam'rs*, 2011 WL 4079623, at *5 (N.D. Cal. Sept. 12, 2011) (Illston, J.)). Plaintiff notes that the *Elder* case was less complex than this case and relied on the "best ensure" standard established in this action. *Id.*

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

With respect to the attorney rates, the Court finds Plaintiff's evidence submitted in this case, as well as the analysis and adoption of similar rates in the *Elder* and *Caltrans* cases, convincing. Although his case was resolved prior to the completion of this case, the plaintiff in *Elder*, also blind, sought accommodations for the California Bar Exam based on the "best ensure" standard adopted by the Ninth Circuit in this case. *Elder*, 2011 WL 672662, at \*6 (citing *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153 (9th Cir. 2011)). The *Elder* Court found Plaintiff's counsel's accomplishments significant and hard-fought, noting that NCBE is now offering accommodations, similar to the ones the Court ordered NCBE to provide to Elder, to other individuals with disabilities. *Elder*, 2011 WL 4079623, at \*5. Because of the case's far-reaching impact, the Court adopted Plaintiff's counsel's requested rates, which were identical to or slightly lower than the rates adopted in *Californians for Disability Rights v. Cal. Dep't of Transp.*, 2010 U.S. Dist. LEXIS 141030, at \*5 (N.D. Cal. Dec. 13, 2010) (Report and Recommendation of MEJ, adopted by 2/2/2011 Order, Case No. 06–5125 SBA, Docket No. 529) (hereinafter "*Caltrans*")—another case brought by Plaintiff's counsel that secured significant benefits for hundreds of thousands of individuals across the state. *Id.* Although directly on point, Defendant does not address the rates adopted in either *Elder* or *Caltrans*. Based on Plaintiff's evidence and the adoption of counsel's rates by this Court in similar cases, the Court approves counsel's rates as reasonable.

Defendant's arguments that counsel's requested rates are unreasonably high relative to "other recent awards" are unpersuasive. *See* Opposition at 13. Defendant primarily relies on *Blackwell v. Foley*, 724 F. Supp. 2d 1068 (N.D. Cal. 2010) (Patel, J.), as an example of reasonable rates for a case "involving a single plaintiff public accommodations disability claim." Opposition at 14. Defendant, however, ignores the fact that the Court in *Elder* rejected NCBE's reliance on *Blackwell* to reduce Plaintiff's counsel's rate request. *See Elder*, 2011 WL 4079623, at \*4. The *Elder* Court stated:

> This Court first notes that *Blackwell*, a case against a restaurant for failure to comply with the ADA, did not—as this case did—set any new precedent or cause the defendant to change a policy which impacts potentially hundreds of individuals each year across California. The Court also recognizes that the declarations submitted in support of the rates sought in *Blackwell* found that the "rates requested were below market rates for attorneys with equal experience."

**United States District Court**
For the Northern District of California

*Id.* (quoting *Blackwell*, 724 F. Supp. 2d at 1079). As in *Elder*, this Court finds *Blackwell* inapposite to this case.

Defendant's argument further relies on the declaration of Mr. Jardini. *See* Jardini Decl. Mr. Jardini's declaration reviews four cases in this district where attorney's fees were awarded, and concludes that, "in a case such as this," senior counsel rates should be in the range of $450 to $550, associate rates in the $250 to $300 range, and paralegal rates $150 or lower. *Id.* at ¶ 38. Mr. Jardini does not discuss *Elder* or *Caltrans*, or any other case establishing new precedent or affecting hundreds of individuals. The Court finds Mr. Jardini's review of the caselaw limited and unrepresentative of the type of case Plaintiff brought in this action and therefore assigns his declaration little weight.

Defendant also argues that Plaintiff's counsel's rate should be cabined by their rate charged for administrative proceedings before the California Public Utilities Commission. Again, however, Defendant's argument ignores the nature of the present action and the scope of counsel's accomplishments. Finally, the Court notes that Defendant does not disclose the hourly rate its attorneys and paralegals charged Defendant for their comparable work in this case.

With respect to the paralegal rates, however, the Court finds that Plaintiff has failed to prove that the proposed rates—$230 for paralegals, and $275 for senior paralegals—are in line with market rates. The highest rate for paralegal work this Court has awarded is $200. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *18-22 (N.D. Cal. Apr. 1, 2011) (Spero, J.) (finding paralegal rates—ranging from $85-$200 at four Bay Area plaintiff-side firms litigating complex case—reasonable and within the market rate). This Court is not persuaded that any rate higher than $200 is appropriate in this case. At the same time, Defendant's assertion that the paralegal rate should be capped at $150 is also unconvincing. The Court finds, based on the evidence submitted with this Motion and this Court's previous award of paralegal rates, that all paralegals at both DRA and BG&L shall be granted an hourly rate of $200.

**United States District Court**
For the Northern District of California

For the reasons discussed above, the Court approves the following hourly rates as reasonable:

| DRA Attorneys | Year of Graduation | Reasonable Hourly Rate |
|---|---|---|
| Laurence Paradis | 1985 | $785 |
| Anna Levine | 2003 | $575 |
| Karla Gilbride | 2007 | $415 |
| Michael Nunez | 2011 | $280 |

| DRA Paralegals | Reasonable Hourly Rate |
|---|---|
| Paralegals | $200 |

| BG&L Attorneys | Year of Graduation | Reasonable Hourly Rate |
|---|---|---|
| Daniel F. Goldstein | 1973 | $805 |
| Melvin J. Sykes | 1948 | $855 |
| Mehgan Sidhu | 2004 | $535 |
| Brett E. Felter | 2007 | $415 |
| Trevor H. Coe | 2010 | $295 |
| Timothy R. Elder | 2010 | $295 |

| BG&L Paralegals and Law Clerks | Reasonable Hourly Rate |
|---|---|
| Senior Paralegals | $200 |
| Paralegals | $200 |
| Law Clerks | $180 |

| LaBarre Law Offices | Year of Graduation | Reasonable Hourly Rate |
|---|---|---|
| Scott LaBarre | 1993 | $655 |

| Mills Legal Clinic at Stanford Law School | Year of Graduation | Reasonable Hourly Rate |
|---|---|---|
| Kevin K. Russell | 1994 | $645 |
| Clinic Students | n/a | $125 |

**United States District Court**

For the Northern District of California

### B.   Reasonableness of Number of Hours Billed in *Enyart v. NCBE*

Plaintiff argues that the her counsel's detailed time records show that the three firms and the Clinic representing her billed a reasonable number of hours for her case. *See Navarro*, 2005 U.S. Dist. LEXIS 39726, at \*19 (explaining that it is Plaintiff's burden to prove that the number of hours are reasonable). Plaintiff notes that her firm counsel has "no charged" over $130,000 in fees through discretionary billing judgment, and the Clinic has voluntarily reduced its student law clerk hours by half, equaling a $20,075 deduction. Motion at 15-16. Plaintiff has further reduced her counsel's merits work by deducting 5 percent from the final lodestar figure in an attempt to account for inefficiency or overstaffing. Motion at 15. With these voluntary deductions, Plaintiff's requested lodestar figure is $1,868,981.31, not including the multiplier. Paradis Reply Decl. Ex. I. Defendant argues that for a variety of reasons, including those analyzed below, many of the hours for which Plaintiff's counsel requests compensation are unreasonable and thus must be eliminated from the lodestar calculation. Opposition at 3-11.

### 1.   Unnecessary Duplication

Trial courts have a responsibility to carefully review attorneys' documentation of time expended in order to eliminate unreasonable "'padding' in the form of inefficient or duplicative efforts." *Ketchum*, 24 Cal. 4th at 1132. "While the Court must carefully review the accounting for inefficient or duplicative billing . . . 'the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.'" *Kempf v. Barrett Bus. Servs., Inc.*, 2007 WL 4167016, at \*5 (N.D. Cal. Nov. 20, 2007) (quoting *Horsford*, 132 Cal. App. 4th at 396).

Defendant argues that the Court should reduce by 75% the 313 hours Plaintiff's attorneys spent coordinating their efforts and strategy in meetings, emails and telephone calls because such coordination was "excessive." Opposition at 5-6. Defendant, however, does not identify why any particular meeting or coordination were unnecessary. Rather, it argues that the total time in this case is excessive. In light of the scope of this case—which spanned two years, and included two preliminary injunctions, a Ninth Circuit appeal, a petition for a writ of certiorari, and a summary judgment order—the Court cannot conclude that the hours spent by co-counsel coordinating their

efforts were unreasonable. Further, in *Elder*, this Court last year rejected Defendant's similarly unsupported argument that the same firms representing Plaintiff in this case had billed hours for unreasonable conferencing in litigating that case. 2011 WL 4079623, at *2.

Next, Defendant challenges the time spent by the three senior attorneys leading Plaintiff's case, asserting that the vast majority of hours by Scott LaBarre and particular hours by Lawrence Paradis and Daniel Goldstein should not be allowed since these attorneys were simply reviewing documents and pleadings others had drafted. Opposition at 6-8. Defendant claims to have identified 402 hours of such unnecessary senior attorney work. *Id.* Defendant, however, has not indicated why any of the particular tasks associated with these 402 hours were not necessary for Plaintiff's case. The *Elder* Court, in addressing the virtually identical argument, stated that NCBE "fails to demonstrate that these 'review' hours by senior attorneys—who are very experienced in ADA litigation—were not necessary in this complex and arguably precedent-setting case. The Court does not find the 'review' hours excessive or otherwise unreasonable." 2011 WL 4079623, at *3.

Defendant also identifies particular billing entries and argues that the work billed in those entries was excessive and unnecessarily duplicative. Opposition at 8-9. Defendant argues that the 63 hours spent by three associates and two paralegals on Plaintiff's opposition to Defendant's motion to stay the preliminary injunction order pending before the Ninth Circuit were excessive and overlapping. Defendant, however, has not provided the Court any reason why it believes the hours spent on the opposition were excessive or overlapping, beyond its conclusory assertions and citation to numerous pages of Plaintiff's billing records. The Court cannot conclude that the hours spent preparing the opposition to Defendant's motion were excessive or overlapping.

Additionally, Defendant asserts that Plaintiff should not be compensated for 18 hours her counsel billed communicating with, and traveling between Baltimore and Pittsburgh to interview, Michael Shamos, a prospective expert witness who never submitted any testimony in this case. *Id.* However, Plaintiff contends that because Defendant was defending its denial of accommodations based in part on security concerns, the consultation with Mr. Shamos, a computer security expert, was necessary to the prosecution of this case and the hours billed were reasonable. Goldstein Reply Decl., ¶ 6. For tactical reasons, Plaintiff's counsel decided not to file a declaration written by Mr.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Shamos. *Id.* The Court does not find the 18 billed hours concerning Mr. Shamos unreasonable given that it was necessary for Plaintiff's counsel to pursue relevant aspects of their case.

Defendant states that three associates and two paralegals billed more than 40 hours preparing to defend Ms. Leetz's deposition, attending her deposition, conferencing, reading transcripts, and summarizing her deposition. *See* Opposition at 8. After a review of the billing records, the Court finds that the hours spent on this deposition—which lasted less than 5 hours—were excessive, though not as extreme as Defendant states. Ms. Levine and Ms. Gilbride spent 28.6 hours combined on tasks related to Ms. Leetz's deposition, including 5 hours billed as time traveling to and at the deposition. For this deposition the Court finds that only 7 hours of preparation, conferencing, and summarizing were necessary. Additionally, the Court finds that only one of the two attorneys should have traveled to and attended the deposition. The work done by paralegals and other attorneys cited by Defendants as excessive, however, was minimal and necessary. Accordingly, the Court deducts Ms. Levine's and Ms. Gilbride's total work on the deposition, $14,841.50, and applies a blended rate of $495 to 12 hours of total work the Court finds reasonable. The Court therefore recommends that Plaintiff be awarded only $5,940 for Ms. Levine's and Ms. Gilbride's work on the Leetz deposition, resulting in a $8,901.50 reduction from the lodestar.

Defendant further argues that it was not necessary or reasonable to have multiple attorneys at court appearances. Defendant points out that five attorneys, including Mr. LaBarre, attended the Ninth Circuit oral argument, but only Mr. Goldstein argued. Time billed by those four attorneys traveling to and attending the oral are not compensable, Defendant argues. Opposition at 8-9 (citing *Hamed v. Macy's West Stores, Inc.*, 2011 U.S. Dist. LEXIS 125838, at *20 (N.D. Cal. Oct. 31, 2011) (Spero, J.) (finding not compensable time spent by summer law clerk attending trial without actively participating in it); *Stonebrae v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *41-42 (N.D. Cal. Apr. 7, 2011) (Chen, J.)). Although the *Elder* Court rejected NCBE's argument that Mr. LaBarre should not be compensated for time spent traveling to San Francisco for a hearing at which he did not argue, the Court there found that the travel was necessary so Mr. LaBarre could participate in the mooting of Mr. Goldstein. *Elder*, 2011 WL 4079623, at *3. The Court also noted that Mr. LaBarre did not charge for the actual time spent at the hearing. *Id.*

12

In preparation for the Ninth Circuit oral argument in this case, Mr. LaBarre participated in the moot telephonically, flew out to San Francisco for the hearing (at no charge), and, unlike in *Elder*, billed 4.2 hours for attending the hearing. LaBarre Decl. Ex. 1, 11-12. Three attorneys at DRA—Ms. Levine, Ms. Gilbride, and Mr. Paradis—each billed five hours for traveling to and attending the argument. Paradis Decl. Ex. D, 9, 25, 42. Because none of these attorneys participated at the argument, the Court finds these hours duplicative and unnecessary. *See Hamed*, 2011 U.S. Dist. LEXIS 125838, at *20; *Stonebrae*, 2011 U.S. Dist. LEXIS 39832, at *41-42. The Court accordingly deducts these 19.2 hours from the lodestar calculation.

Defendant also generally objects to "time spent by Mr. LaBarre, Mr. Goldstein, and Ms. Shidu to travel to San Francisco for district court hearings in which they did not argue." Opposition at 9. Quite unhelpfully, Defendant does not indicate which hearings are at issue or cite to particular pages in the billing records where the contested entries could be found. Nevertheless, after a careful review of the billing records, the Court finds that Mr. LaBarre spent a total of 16 hours preparing for, traveling to and from, and attending the hearing on the first preliminary injunction, though he did not participate in the hearing. LaBarre Decl. Ex. 1, 7. Additionally, Mr. LaBarre similarly billed 7.8 hours for the hearing on Plaintiff's summary judgment motion. *Id.* at 16. The Court accordingly deducts 23.8 hours from Mr. LaBarre's lodestar calculation. The Court also deducts the 12 hours Ms. Sidhu billed for traveling between Baltimore and San Francisco to attend, but not argue at, the first preliminary injunction hearing. Defendant's assertion that Mr. Goldstein attended hearings at which he did not argue is unsupported by the record. Mr. Goldstein appears to have argued at every hearing in this case, with the exception of the summary judgment hearing—but Mr. Goldstein has billed no time for traveling to or attending that hearing.

### 2.    Block Billed Hours

Defendant argues that block billed time entries, *i.e.*, time entries that list multiple activities without indicating how much time was spent on each activity, fail to meet Plaintiff's burden to prove the reasonableness of her attorney's fees. Opposition at 9. Defendant identifies 252 hours of alleged block billing. *Id.* at 9. Plaintiff contends that most entries that Defendant highlights are not truly block billing because such entries bill for only closely related tasks. Reply at 6. Moreover, even if

United States District Court

For the Northern District of California

some entries constitute block billing, Plaintiff argues, courts have held that Plaintiffs may still recover for such entries if all of the time recorded was for reasonable and necessary work on the case. *Id.* (citing *Elder*, 2011 WL 4079623, at \*2 n.2; *Oberfelder v. City of Petaluma*, 2002 WL 472308, at \*3 (N.D. Cal. Jan. 29, 2002) (Patel, J.). Unlike the Court in *Elder* and *Oberfelder*, this Court, after a thorough review of Defendant's exhibits identifying allegedly block billed hours, finds that many entries do indeed refer to multiple activities, making the review of Plaintiff's fee motion more difficult. *See Elder*, 2011 WL 4079623, at \*2 n.2 (reviewing only 7.1 hours of alleged block billing and finding that the hours and activities reasonable, despite the block billing); *see also Oberfelder*, 2002 WL 472308, at \*3 (finding no block billing).

Although Defendant identifies 252 hours of block billing, the Court finds that only approximately half of the identified hours are actually block billed. The Court reduces these 126 hours of block billing by only 20 percent. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (approving reduction of block billed time by 20 percent, which district court found to be a "middle ground" established in the California State Bar's Arbitration Advisory 03-01 (2003)). Defendant, however, has not provided the Court with a dollar amount for the block billed hours which it requests be reduced from the fee award, nor has Defendant listed the particular attorney and the number of hours he or she allegedly block billed. Accordingly, the Court will reduce the fee award by 25.2 hours for block billed hours (126 hours X 20 percent), at the rate of $563, the average rate of the attorneys at the three firms billing hours on the merits work of this case. Thus, the Court recommends that the fee award be reduced by $14,187.60 for block billing.

### 3.   Motion for Second Preliminary Injunction

Defendant asserts that Plaintiff's counsel should recover only 15 of the 40 hours billed for time spent on the motion for the second preliminary injunction. Opposition at 10. Because the second motion relied heavily on the facts and legal arguments presented in the first motion, Plaintiff's hours spent on the second motion were largely unreasonable, Defendant argues. *Id.* Plaintiff contends that many of the activities Defendant marks as excessive were necessary to complete the motion. Reply at 5. Although the basic facts of Plaintiff's disability were unchanged following the first preliminary injunction, Plaintiff's motion for a second preliminary injunction

included new additional facts related to difficulties she encountered when taking the MBE and MPRE following the Court's first preliminary injunction. *See* Order Granting Second Preliminary Injunction, Dkt. 89, 3. These new facts detailed the problems Plaintiff encountered at the two testing sites, and served as the basis for the Court's order requiring additional accommodations to alleviate those problems. *Id.* at 8-9. The Court cannot conclude that the hours spent on the motion for the second preliminary injunction were unreasonable in light of Plaintiff's need to further develop the factual record.

### 4. Motion for a Third Preliminary Injunction

Defendant contends that Plaintiff should not be reimbursed for any of the time associated with Plaintiff's withdrawn motion for third preliminary injunction. Opposition at 11. Although Plaintiff "no charged" much of this time, Defendant argues that the remaining 15.9 hours should also be deducted. *Id.* Defendant notes that it has already paid its own counsel $39,159 to respond to Plaintiff's withdrawn motion. *Id.* (citing Terlouw Decl., ¶ 15). Plaintiff does not respond to Defendant's contentions in her Reply brief. The Court finds that it would be unreasonable to include any hours related to the third motion that Plaintiff eventually determined was unnecessary and voluntarily withdrew. Thus, the Court deducts 6.8 hours from Ms. Levine's lodestar calculation; 1.2 hours from Ms. Gilbride; 2.6 from Mr. Paradis; 4.6 from Mr. Goldstein; and 0.7 from Mr. LaBarre.[4] This totals $10,610.50, which the Court recommends be reduced from the lodestar.

### 5. Non-Recoverable Clerical Tasks

"[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). "Clerical work such as copying and scanning, mailing, and organizing and tabbing exhibits are not tasks that should be billed to clients; rather, they should be covered or subsumed by an attorney's hourly rate, just as are the costs of overhead." *Caltrans*, 2010 U.S. Dist. LEXIS 141030, at *47-48 (citing *Leuzinger v. County of Lake*, 2009 WL 839056, at *4 (N.D. Cal. Mar. 30, 2009)). "[T]asks such as filing

---

[4] While the Court is appreciative of Defendant's work in tabulating the hours it contests and organizing them in discrete categories, the Court finds it entirely unhelpful to assign a total number of contested hours by firm instead of by attorney. The lodestar, of course, is calculated by taking the number of hours billed by a particular attorney and multiplying it by that attorney's particular rate. Thus, in order to properly calculate the lodestar, the Court must retrace Defendant's steps in the billing records and tabulate the contested hours by attorney, rather than by firm.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

documents on ECF, revising and preparing documents referred to in the time records as 'filings,' and organizing certain files in anticipation of preparing a motion are not clerical tasks." *Elder*, 2011 WL 4079623, at *4 (quoting *Caltrans*, 2010 U.S. Dist. LEXIS 141030, at *48) (internal quotations omitted).

Defendant argues that BG&L and DRA paralegals and law clerks improperly billed 231 hours of clerical tasks. Opposition at 12. To the extent Defendant highlights clerical tasks such as printing, scanning, collating, faxing and/or saving documents, calendaring, and routing phone calls, the Court agrees that such tasks are not compensable. But Defendant also seeks to have non-clerical tasks discounted from the lodestar. For example, editing and reviewing documents, reviewing emails regarding filings, conferencing about filings, expert reports, and scheduling depositions (rather than simply entering them on the calendar) are not clerical activities. *See Caltrans*, 2010 U.S. Dist. LEXIS 141030, at *49-50.

Upon review, the Court finds that one-half of the contested billing entries contain improperly billed clerical work. Because Defendant identifies hours billed without distinguishing between paralegals and law clerks, the Court will apply a blended billing rate for DRA and BG&L's paralegals and law clerks—$190—to 115.5 hours of improperly billed clerical work. Therefore, the Court recommends that $21,945 be deducted from the lodestar.

### C.    Reasonableness of Number of Hours Billed for Work on The Fee Motion

Plaintiff's counsel are entitled to recover for all hours reasonably expended on the attorneys' fee motion. *Serrano*, 32 Cal. 3d at 624. In her Motion filed on December 5, 2011, Plaintiff submitted an initial figure of $11,360 for work on the fee motion through November 15, 2011. Motion at 20-21. Plaintiff stated that "[t]his figure will be updated in Plaintiff's reply papers to cover work after November 15 in preparing the reply papers." Motion at 21. Plaintiff further stated that billing entries made after November 15 could not be included in the December 5 motion because they had not yet been entered into Plaintiff's timekeeping system. Paradis Decl., ¶ 38. Accompanying Plaintiff's Reply are billing records for each firm's "fees on fees" after November 15, totaling $216,660. *See* LaBarre Reply Decl. Ex. A; Goldstein Reply Decl. Ex. A; Paradis Reply Decl. Ex. A. DRA attests to taking on the bulk of the fees motion and reply, $193,787, including $14,800 in "estimated" fees necessary to complete the reply and attend the hearing. Paradis Reply

**United States District Court**
For the Northern District of California

Decl. Ex. H.  In its billing judgment, DRA has voluntarily reduced its $193,787 bill by 10 percent. Reply at 15.  BG&L has claimed $17,109 in fees on fees, including $3,000 in estimated fees. Paradis Reply Decl. Ex. H.  LaBarre Law Offices has claimed $5,764.  *Id.*  The total requested for fees on fees in Plaintiff's Reply is $197,281.30 with a 10 percent voluntary reduction, and $216,660 without such a reduction.

Because a large majority of the fees on fees work was submitted for the first time in Plaintiff's Reply, the Court gave Defendant leave to file a sur-reply in which it could contest Plaintiff's fees on fees.  Defendant timely filed its sur-reply, and Plaintiff followed with her reply to the sur-reply.  *See* Dkt. Nos. 207 & 209.  Defendant objects to Plaintiff's fees on fees request on multiple grounds—including excessive hours and senior attorney involvement, block billing, and impermissible "estimated" fees—and proposes a total of $56,115.13.  *See* NCBE's Sur-Reply to Plaintiff's Reply in Support of Plaintiff's Motion ("Sur-Reply").  Defendant's proposed amount reflects a reduction in total hours from 410.1 to 231.8.  *Id.* at 8.  Plaintiff rejects Defendant's total, and provides new billing records that reflect an increase from $17,800 in estimated fees to $70,877.50 in actual fees on fees work, including $14,129 incurred since the hearing on this Motion. *See* Reply to Defendant's Sur-Reply in Support of Plaintiff's Motion.  The total requested for fees on fees in Plaintiff's Reply to the Sur-Reply is $246,020.50.[5]

The Court first notes that Plaintiff's initial request for $17,800 in estimated fees is rejected because it is not supported by adequate documentation.  *See Elder*, 2011 WL 4079623, at *7. Additionally, the Court finds that the $56,748.50 in fees on fees *incurred prior to the March 23 hearing and revealed for the first time in Plaintiff's Reply to the Sur-Reply* are untimely and therefore denied by the Court.  Finally, the Court finds that $14,129 in fees on fees incurred since the hearing on the Motion should not be awarded because it was Plaintiff's counsel's own actions in including a large majority of its fees on fees billing records in its Reply that necessitated further briefing.  The Court finds it unreasonable to award fees to Plaintiff for work that Plaintiff could have reasonably avoided.

---

[5] As pointed out by Defendant, Plaintiff mistakenly included 2.7 hours of merits work by Ms. Levine in its fees on fees request.  Because Defendant does not otherwise object to these hours, the Court will add these 2.7 hours reasonably expended to Plaintiff's merits fees.

After a careful review of the supplemental briefing, the Court agrees with many of Defendant's objections to Plaintiff's fees on fees request in her Reply, and concludes that a large portion of the hours billed are excessive, duplicative, and/or block billed. The Court, however, does not agree with Defendant that all the hours it has identified are unreasonable. For example, this Court declines to question the staffing decisions at DRA, and therefore rejects Defendant's argument that Mr. Paradis should have relinquished the bulk of his duties to junior attorneys. *See Chaid v. Glickman*, 1999 WL 33292940, at *14-15 (N.D. Cal. Nov. 17, 1999) (Spero, J.) (finding that such an inquiry would require a level of scrutiny that "vastly exceeds the typical review where fees are sought"). Instead, the Court finds that only one-third of Plaintiff's requested hours are excessive and duplicative. The Court is well aware that this fee motion required a substantial amount of work and coordination, and the Court is satisfied that 273 hours of work reflects a reasonable expense of hours in this case.[6] The Court calculates Plaintiff's reasonable fees on fees work to be $131,564.88.[7]

### D.   Calculation of Lodestar Figure

Having approved the reasonableness of counsel's hourly rates and the amount of time billed, the Court, taking into account the deductions discussed above, calculates Plaintiff's counsel's lodestar as follows:

| Total Merit Loadstar Requested (includes 5% voluntary reduction) | $1,870,533.81 |
|---|---|

| Merit Deductions from the Loadstar | Amount Deducted |
|---|---|
| 16.6 hours related to the Leetz deposition | $8,901.50 |
| 4.2 hours for LaBarre's attendance at Ninth Circuit oral argument | $2,751 |
| 5 hours for Levine's attendance at Ninth Circuit oral argument | $2,875 |
| 5 hours for Gilbride's attendance at Ninth Circuit oral argument | $2,075 |

---

[6] The Court notes that the amount of hours found reasonable is not materially different than what Defendant thinks is reasonable. *See* Sur-Reply at 8 (conceding that 231.8 hours were reasonably expended on Plaintiff's fees on fees work).

[7] In reaching this figure, the Court subsumed Plaintiff's ten percent voluntary reduction in the one-third reduction made to Plaintiff's counsel's gross fees on fees hours.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

| | |
|---|---|
| 5 hours for Paradis' attendance at Ninth Circuit oral argument | $3,925 |
| 23.8 hours related to LaBarre's attendance at court hearings | $15,589 |
| 12 hours for Sidhu's travel to San Francisco | $6,420 |
| 25.2 hours for block billing | $14,187.60 |
| 15.9 hours related to Plaintiff's motion for a third preliminary injunction | $10,610.50 |
| 115.5 hours for improperly billed clerical work | $21,945 |
| Difference between DRA's 470.1 hours[8] of paralegal work charged at $230/hr and at $200/hr | $14,103 |
| Difference between BG&L's 358.4 hours[9] of senior paralegal work charged at $275/hr and at $200/hr | $26,880 |
| Difference between BG&L's 69.2 hours[10] of paralegal work charged at $230/hr and at $200/hr | $2,076 |
| **Total Merit Deductions** | **$132,338.60** |

| | |
|---|---|
| **Total Merit Loadstar** | **$1,738,195.21** |

| | |
|---|---|
| **Total Unadjusted Fees on Fees Requested in the Reply** | **$216,660** |

| Fees on Fees Deductions from the Loadstar | Amount Deducted |
|---|---|
| "estimated" fees | $17,800 |
| Difference between DRA's 60.4 hours of paralegal work charged at $230/hr and at $200/hr | $1,812 |
| Difference between BG&L's 9.1 hours of senior paralegal work charged at $275/hr and at $200/hr | $682.50 |

---

[8] The Court reached this number by identifying the "no charged" paralegal hours in DRA's billing records—47.4—and reducing these hours from the total hours tabulated by DRA for paralegal work—517.5.

[9] BG&L "no charged" 0.3 hours, which is reflected in the total senior paralegal hours.

[10] BG&L also "no charged" 0.6 hours for paralegal work, which is reflected in the total hours.

| Total Fees on Fees Deductions (prior to one-third overall deduction) | $20,294.50 |
|---|---|

| Total Fees on Fees Lodestar (prior to one-third overall deduction) | $196,365.50 |
|---|---|
| One-Third Reduction for Excessive and/or Duplicative Work | $64,800.62 |

| Total Fees on Fees Loadstar | $131,564.88 |
|---|---|

| Total Merits Loadstar | $1,738,195.21 |
|---|---|
| Total Fees on Fees Loadstar | $131,564.88 |
| TOTAL LOADSTAR | $1,869,760.09 |

**E.     Costs Sought in Connection with the Litigation and the Fee Motion**

Federal Rule of Civil Procedure 54(d)(1) states that "costs—other than attorney's fees—should be allowed to the prevailing party" unless otherwise provided by law or court order. Plaintiff originally sought $80,639.96 in costs in her Motion, but reduced that amount to $75,569.81 in her reply. Motion at 20; Reply at 14. Pursuant to Local Rule 54-1, Plaintiff submitted a Bill of Costs with the Clerk's Office on December 6, 2011, requesting $79,461.10 in costs. Dkt. 187. To avoid potential inconsistency between the Clerk's taxation of costs and the Court's award of expenses, the Court declines to address Plaintiff's request for expenses until after the Clerk's Office has taxed costs and Plaintiff has complied with the requirements set forth in the Local Rules for challenging the determination of the Clerk's Office. Therefore, the Court recommends that Plaintiff's request for costs be denied without prejudice to renewing it after the Clerk's Office has ruled on the Bill of Costs.[11]

**F.     Enhancement of Lodestar Calculation for Work on *Enyart v. NCBE***

Federal law does not permit the application of multipliers in actions brought under fee-shifting statutes like the ADA. California law does. *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009 ) (Patel, J.) (citing *City of Burlington v. Dague*, 505

---

[11] Plaintiff requests $308.68 in costs not included in their Bill of Costs. Reply at 15; Paradis Reply Decl. Ex. B; Goldstein Reply Decl. Ex. B. The Court finds these costs reasonable and therefore recommends that these costs be awarded at this stage.

20

U.S. 557, 566 (1992); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001)).  "When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk."  *Id.*  (quoting *Fair Housing Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*, 523 F. Supp. 2d 1164, 1170 (S.D. Cal. 2007)).  In determining an appropriate multiplier, California courts evaluate several factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."  *Ketchum*, 24 Cal. 4th at 1132.  The Court recognizes that under *Ketchum* it retains independent discretion to award a fee enhancement to effectuate the purposes of the Unruh Act.  24 Cal. 4th at 1136-38 (asserting that a court is not required to include a fee enhancement for *contingent risk*, exceptional skill, or other factors, although it retains discretion to do so in the appropriate cases) (emphasis added).  A multiplier should apply only in "rare and exceptional cases."  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

As a preliminary matter, Defendant asserts that because this case is, "at core," an ADA case, and the Unruh Act claim "played a minimal to nonexistent role in the Court's orders and the Ninth Circuit's decision in this case," this Court should apply federal law, which does not allow for multipliers.  Opposition at 18-19.  Defendant insists that Plaintiff's Unruh Act claim was dependent upon her ADA claim because the Unruh Act does not independently require that accommodations be provided to disabled examinees.  Opposition at 19 (citing *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1409-14 (2008)).  Plaintiff does not respond to Defendant's argument.

Although the Unruh Act does not directly regulate accommodations to disabled persons, the Act "*does* indirectly penalize a failure to grant reasonable accommodations in Civil Code section 51, subdivision (f), which incorporates otherwise relevant ADA standards as a 'floor' under state law: 'A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section.'"  *Turner*, 167 Cal. App. 4th at 1410 (emphasis original).  Thus, Plaintiff's Unruh Act claim seeking accommodations was based on her ADA claim.  However, it does not follow that where a multiplier is barred under the ADA, it is also barred under the Unruh Act.  *See Wilson v. Pier 1 Imports, Inc.*, 439 F. Supp. 2d 1054, 1065-66

**United States District Court**
For the Northern District of California

(E.D. Cal. 2006) (finding that plaintiff could recover damages under his Unruh Act claim even though his claim was based solely on an ADA violation and the ADA did not allow for recovery of such damages).  Defendant cites no case to the contrary.  The Court declines to adopt Defendant's suggested rule that a successful state law claim must stand independent of any federal claims in order to qualify the plaintiff's case for a multiplier.

In any event, the Court has examined the record and reviewed the filings and finds that, although Plaintiff's counsel made substantial achievements in a hotly contested case, a multiplier is not appropriate for this case.  The Court discusses the factors affecting the multiplier below.

Regarding the novelty and difficulty of the questions involved, the Court finds that this factor was already taken into account in approving counsel's hourly rates.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-364 (9th Cir. 1996) (only factors "that are not already subsumed in the initial lodestar calculation" are relevant).  As discussed above, this Court finds that similar rates approved in *Elder*—where the Court explicitly relied on the difficulty and precedent setting nature of the case in awarding the hourly rates—are appropriate in this case because the cases have much in common.  To be sure, *Elder* and other courts have relied upon the Ninth Circuit ruling in this case in finding violations of the ADA against NCBE.  *See Elder*, 2011 WL 672662, at *7 ("[M]uch of NCBE's argument as to Elder's chance of success on the merits ignores the fact that the Ninth Circuit unequivocally adopted the 'best ensure' standard in *Enyart*."); *Bonnette v. D.C. Ct. of Apps.*, 796 F. Supp. 2d 164, 173 (D.D.C. 2011); *Jones v. Nat'l Conference of Bar Exam'rs*, 801 F. Supp. 2d 270, 284 n.4 (D.Vt. 2011).  But it still remains that counsel's hourly rate in this case already takes into account the attorneys' "extensive backgrounds in civil rights litigation, and their handling of high profile and precedent setting cases." *Elder*, 2011 WL 4079623, at *4.  Under the circumstances of this case, the Court declines to assess more weight to this factor than has already been taken into account in calculating the lodestar.

Likewise, save exceptional circumstances not present here, the skill of the attorneys is a factor necessarily reflected in the hourly rate component of the lodestar figure; the more skillful and experienced the attorney, the higher his or her hourly charge.  *Hamed*, 2011 WL 5183856, at *11 (citing *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998)).  The skill of the attorneys here was adequately taken into consideration in adopting the lodestar.  Regarding the extent to

United States District Court

For the Northern District of California

which the litigation precluded other employment by the attorneys, the Court notes that ordinary preclusion from performing other work while engrossed in a pending action is a part of every case, and a party's counsel are not entitled to a multiplier merely because they were busy during the action. *See Id.* Plaintiff's counsel here has not shown that this case, though lasting two years, went beyond such ordinary preclusion, especially where Plaintiff's counsel could distribute the work among three firms and a law school clinic.

Finally, the Court declines to exercise its discretion to apply a multiplier because of the contingent nature of the case. Plaintiff concedes that DRA is the only firm that took this case on a contingent basis. Motion at 18. Plaintiff states that this case "was also of a highly contingent nature for BG&L," but Plaintiff's submitted declarations reveal that the National Federation of the Blind (NFB) "pays BGL for its work on impact litigation such as the present case on an hourly basis at rates lower than those requested here." Goldstein Decl., ¶ 30. BG&L will pay any and all fees it recovers in this action to NFB. *Id.* Mr. LaBarre has a similar arrangement with NFB. LaBarre Decl., ¶ 12. To the extent Plaintiff argues that NFB's risk of not getting paid back should warrant a multiplier, Plaintiff has presented no authority showing that the Court can consider the financial risk of non-attorneys. Indeed, "[t]he contingent fee compensates the *lawyer* not only for the legal services he renders but for the loan of those services . . . . The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for *attorneys* enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1132-33 (emphasis added). The Court cannot conclude that BG&L or Mr. LaBarre took this case on a contingent basis.

Although DRA did take this case on a contingent basis, the Court declines to exercise its discretion to award a multiplier to its lodestar amount. Even in a contingency case, a multiplier may be declined. *See Ketchum*, 24 Cal. 4th at 1136-38. Here, taking into account the contingent risk (which DRA takes in every case) and the other factors described above, the Court declines to recommend a multiplier.[12]

---

[12] Plaintiff's reliance on *Target*, which awarded DRA and BG&L a 1.65 multiplier for a civil rights case, is distinguishable from the present action. There, the Court based its award of a multiplier not only on the contingency of the case, but also on the precedent setting nature of the case and the scope and significance of plaintiffs' victory. *Target*, 2009 WL 2390261, at *6-7. As noted above, this Court has already taken such factors into account in approving the hourly rates, and therefore it would

**United States District Court**
For the Northern District of California

**V.     CONCLUSION**

For the reasons stated above, the Court RECOMMENDS the following amounts:

$1,869,760.09 in attorneys' fees, $308.68 in costs.

Dated:  May 15, 2012

_____

JOSEPH C. SPERO

United States Magistrate Judge

---

be improper to "double-count" those qualities in awarding a multiplier.  The Court in *Target*, unlike here, had not taken those factors into account when calculating the lodestar, and therefore its consideration of them in awarding a multiplier was entirely proper.  *See Id.* at *3.

24